State, ex rel. Davis, v. Brown County Bank.

---

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, APPELLEE, V. BROWN COUNTY BANK, DEFENDANT: CHICAGO TITLE & TRUST COMPANY, TRUSTEE, APPELLANT.

FILED JULY 7, 1924.   No. 22874.

Banks and Banking: GUARANTY FUND. The bank guaranty fund is created "for the protection of depositors in banks;" and, unless money or its equivalent has been deposited, the guaranty fund is not liable, though the banking corporation itself may be.

APPEAL from the district court for Brown county: ROBERT R. DICKSON, JUDGE. *Affirmed.*

Fradenburg & Matthews, for appellant.

O. S. Spillman, Attorney General, George W. Pratt, J. P. Palmer, William M. Ely and D. R. Mounts, contra.

Heard before LETTON, ROSE, and DEAN, JJ., BLACKLEDGE and REDICK, District Judges.

LETTON, J.-

The claimant, Raymond J. Bischoff, a resident of Chicago, alleges that on January 10, 1921, the Brown County Bank, of Long Pine, Nebraska, executed and delivered to H. F. Bird 20 certificates of deposit, in due and regular form, amounting in all to $30,000, and drawing interest at 5 per cent.; that on about the first day of February, 1921, he purchased said certificates before maturity for a valuable consideration without notice of any defects therein, paying therefor the sum of $28,500, and they were indorsed by the payee and delivered to him; that he thereby became a creditor and depositor of the Brown County Bank, and is entitled to the protection of the bank guaranty fund. He prays judgment for $30,000 with interest and costs, and that the payment be ordered out of the guaranty fund. The receiver admits the execution of the certificate, but denies that claimant is a depositor of the bank or is entitled to the protection of the bank guaranty fund; denies that he is a *bona fide* holder; and alleges that he took them with full knowledge that the bank was insolvent and that its capital was impaired; that there was no deposit in the bank for which the certificates were issued, and that the transaction was in fact a loan of money made by him to the bank, and that the issuance of the certificates by the officers of the bank to Bird, and the transfer of the same from Bird to Bischoff, was for the purpose of covering up the true nature of the transaction. The trial court found that the relation of depositor and depository never existed between the claimant and the bank, and that the claim is not a charge against the depositors' guaranty fund of the state. It was allowed as a general claim against the bank to the amount of $31,948.53. Bischoff having been adjudged a bankrupt during the pending of the action, the Chicago Title & Trust Company, trustee, was substituted as claimant, and filed this appeal.

The uncontradicted testimony shows that in January, 1921, the bank was hard pressed for funds, and that in order to obtain money the president and cashier caused to be executed a time certificate for $30,000, payable to H. F. Bird, who was a resident of Brown county, and was willing to assist the bank to obtain funds. Mr. Bird, together with Mr. Wilson, the cashier of the bank, went to Chicago for the purpose of disposing of this certificate. After several days of unsuccessful effort Mr. Wilson met one Rockwell, a broker of that city. At Rockwell's suggestion this certificate was returned to the bank. Wilson, then, with the consent of the president of the bank, who had been consulted by long-distance telephone, executed 20 other certificates in smaller denominations, but evidencing the same amount. After several attempts Rockwell finally negotiated a sale of these certificates to the claimant Bischoff. He represented to Bischoff that the bank was in need of immediate funds to help the farmers who were very hard pressed. Bischoff testifies that he knew that was the general condition, so he accepted the story at its face value. He offered to sell the certificates at a discount of 5 per cent. Bischoff requested one Buchanan, a broker, who had formerly acted for him in the purchase of securities, to investigate the matter and report to him, and requested his bank, the Great Lakes Trust Company, to look up the standing of the Brown County Bank. Receiving favorable reports from both of these sources, he agreed to purchase the certificates at 5 per cent. discount. Rockwell wanted a cashier's check for $24,000 made payable to the Brown County Bank, and $4,500 in currency. He explained to the witness that the $4,500 in currency was to meet obligations which the bank had contracted in Chicago. Bischoff later found that the $4,500 had been divided by Rockwell, Buchanan, and one Brinkley, who had put them in touch with each other, as commission. He also was allowed the accrued interest on each certificate, and he testifies that the amount of discount was not unusual at that time. It is established that Bird never had the certificates in his pos-

session except while he was indorsing them for transfer. The $24,000 was placed to the credit of the bank with its Omaha correspondent, and became part of the assets.

At the hearing in this court counsel for the claimant was frank enough to concede that the guaranty fund could not under our former decisions be held for any more than the amount of money actually received by the bank, namely $24,000, but insisted that in equity, the bank having received $24,000 and the guaranty fund having received the benefit by the increase of the assets of the bank in that amount, the guaranty fund ought to be held to that extent. But the fund is created solely "for the protection of depositors in banks." Comp. St. 1922, sec. 8024. Bird made no deposit in the bank. He never became a depositor and he had no interest in the certificates. Bischoff, likewise, never became a depositor. True, he may have been deceived into the belief that Bird had actually made a deposit for the express purpose of assisting the bank, and that the certificates were being sold to reimburse Bird. But the fact that $24,000 of the money was to go to the bank and not to Bird was an inconsistent circumstance which should have put him upon inquiry. He knew the transaction was out of the usual course, that Bird was acting in the interests of, and that the broker was selling the paper for the benefit of, the bank. These facts do not form a basis for a claim against the guaranty fund. *State v. Farmers State Bank,* 111 Neb. 117. Again, Bischoff received 5 per cent. discount in addition to the 5 per cent. interest allowed by law and to accrued interest of from half a month to a month. This amounted to a loan to the bank at an unlawful rate, and was not within the protection of the guaranty fund. *Iams v. Farmers State Bank,* 101 Neb. 778; *State v. Banking House of A. Castetter,* 110 Neb. 564.

The fund is a creature of the statute, and, unless an actual *bona fide* deposit of money or its equivalent is made, a claim cannot fall within the provisions of the law. It is to be regretted that the limitations of the statute and the distinction between liability on the part of a bank and lia-

bility on the part of the guaranty fund have both been over-
looked in several instances by purchasers of certificates of
deposit unlawfully issued, and this failure to distinguish
has misled innocent investors to their pecuniary loss.
The guaranty law protects depositors only, and we are not
vested with power to add to the statute a liability of the
guaranty fund for certificates wrongfully issued which do
not represent  actual deposits. *State v. Farmers State Bank,*
p. 380, *post.*   While alike in some respects, the facts in
*State v. American State Bank, ante,* p. 272, are clearly
distinguishable from the facts here.   In that case the bank
received liberty bonds for the full face value of the certi-
ficates.

The. district court reached the proper conclusion, and its
judgment is

AFFIRMED.

Note—See Banks and Banking, 7 C. J. p. 485, sec. 15
(1925 Ann.).