STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, APPELLEE, V. FARMERS STATE BANK OF WINSIDE, APPELLEE: CORN EXCHANGE NATIONAL BANK OF OMAHA, APPELLANT.

FILED JULY 7, 1924. No. 23114.

1. **Banks and Banking:** GUARANTY FUND: DEPOSITS. "In order to create a deposit which will be protected by the guaranty law, as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law." *State v. Farmers State Bank*, 111 Neb. 117.

2. ———: DEPOSITS. Evidence, the substance of which is set out in the opinion, examined, and *held* not to constitute a deposit within the meaning and protection of the guaranty law.

APPEAL from the district court for Wayne county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Brome & Ramsey,* for appellant.

*O. S. Spillman, Attorney General,* and *Fred S. Berry, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN and DAY, JJ., and REDICK, District Judge.

DAY, J.

In the above styled action proceedings were had resulting in the appointment of a receiver to wind up the affairs of the Farmers State Bank of Winside, hereinafter referred to as the Winside Bank. The Corn Exchange National Bank, the appellant, filed its claim with the receiver for $2,000 with interest, based upon a certificate of deposit issued by the Winside Bank. The appellant prayed that its claim be allowed as a valid claim against the Winside Bank, and that it be paid out of the guaranty fund. The receiver filed objections to the allowance of appellant's claim as a preferred claim payable out of the guaranty fund, but admitted that it was a general claim against the bank. The trial court found, and entered judgment accordingly, that the certificate of deposit held by appellant was a general obligation of the Winside Bank, but denied that it was a preferred claim payable out of the guaranty fund. From this judgment the appellant has appealed.

The certificate of deposit in question was for the sum of $2,000, was dated March 23, 1921, was payable to W. T. Waldron or order, and was due January 1, 1922. The certificate was a negotiable instrument, and the evidence is clear that the appellant is the holder thereof in due course.

Does the certificate represent a "deposit" in the bank so as to bring it within the protection of the guaranty fund? In *State v. Farmers State Bank,* 111 Neb. 117, it was held: "In order to create a deposit which will be protected by the guaranty law, as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law." In determining whether a transaction creates a "deposit" within the protection of the guaranty fund, the law will look through all semblances and forms to ascertain the

actual facts as to whether there has been a *bona fide* deposit, and, if not, the guaranty fund does not protect the transaction, no matter how it may be evidenced.

The facts leading up to the issuance of the certificate are as follows: In December, 1920, the Winside Bank was hard pressed for ready money, and was having great difficulty in keeping on hand a sufficient amount of money to meet the cash reserve required by law. Fred W. Weible was president of the bank and held a controlling interest in its capital stock. The bank was capitalized for $25,000, and had a book value showing a surplus of $25,000. On December 10, 1920, L. D. Spalding and W. T. Waldron purchased from Weible 150 shares of the stock in the bank, which gave them a controlling interest therein. They paid $10,000 for the shares of stock, being $66.66 2-3 a share. Seventy-five shares were issued to each of them. Weible resigned from the office of president, but remained chairman of the board of directors of the bank. Thereupon Spalding and Waldron became president and vice-president, respectively, and the active managers of the bank. As a part of the transaction the $10,000 paid for the stock was not turned over to Weible, but was deposited in the bank in an account designated "Waldron and Spalding, Trustees." At the same time and as a part of the transaction Weible assigned his property to Waldron and Spalding in trust, with the understanding that the proceeds thereof should be placed in the Waldron and Spalding Trustee account to take up any bad paper which might be in the bank. Waldron testified that, at the time that he and Spalding became active managers of the bank, "it was hard up, like lots of them, for ready money. The reserve was short. It was overloaded." He also testified that from that time on there was a steady withdrawal of deposits, and that the bank was in bad shape financially. At different dates sums of money which had been received from the Weible assets were credited to the trustee account, and checks were drawn on the trustee account to take up some of the bad paper. On March 3, 1921, a note of John H. Neary for

$9,287.60, which was a part of the Weible assets, was put into the bank as a part of its bills receivable, and the trustee account credited with this sum. The Neary note was dated in February, 1921, and was due one year from date. There was collateral security to the Neary note consisting of second and third mortgages on real estate. On March 23, 1921, Spalding and Waldron drew a check on the trustee account for $16,000 in favor of Weible, which he deposited to his individual credit in the bank, and at the same time, and as a part of the same transaction, Weible drew two checks of $8,000 each to Spalding and Waldron. For these checks four certificates of deposit for $2,000 each were issued by the bank to Spalding and four certificates for $2,000 each to Waldron. Four of the certificates were paid before the bank failed. One of the certificates issued to Waldron is the certificate now in question. The crediting of the trustee account with the proceeds of the Neary note was in furtherance of an arrangement between Waldron and Spalding, wherein they resold 130 shares of stock in the bank to Weible for $30,000, or something over $230 a share. The balance of the purchase price above the $16,-000 was paid by transferring to Waldron and Spalding certain notes.

At the time of the purchase of the Neary note by the bank, its cash reserve was far below the legal requirements, and at the time of the issuance of the certificates of deposit the cash reserve in the bank was less than $5,500. The bank should have had something over $60,000 cash reserve.

Section 8003, Comp. St. 1922, in so far as applicable here, provides in substance that a bank shall maintain a reserve of at least 15 per cent. of its deposits. Section 8004 provides that a bank shall not make any new loans or discounts if it does not have the legal reserve. At the time the $16,000 check was drawn on the trustee account there was on deposit in that account $16,277.09. The entire transaction, while appearing regular upon the face of the books, was in fact a scheme or design to enable Spalding

and Waldron to sell their shares of stock at a very much inflated value, and to secure the payment thereof at the expense of the guaranty fund. Viewed in its entirety, we think it is clear that there was not a *bona fide* deposit against which the certificates were issued.

It is next urged by appellant that, even though it be conceded that the transaction leading up to the issuance of the certificates was not a deposit within the meaning of the depositors' guaranty law, appellant being an innocent purchaser of a negotiable instrument is entitled to the protection of the guaranty law. Since this appeal was lodged in this court, and the brief of the appellant filed, this court has passed upon the direct question presented in the present case adversely to the contention of the appellant. *State v. Farmers State Bank,* 111 Neb. 117.

Counsel for appellant contend that the bank as well as the state officers are estopped to deny that the claim is a charge against the guaranty fund. In this contention counsel has failed to recognize that what might be an estoppel against the bank may not be an estoppel against the guaranty fund. The bank and its officers could do nothing to impose a liability upon the guaranty fund, except as the liability is imposed by statute. The banks, as such, have nothing to do with the guaranty fund.

The judgment of the trial court is, therefore,

AFFIRMED.

Note—See Banks and Banking, 7 C. J. p. 485, sec. 15 (1925 Ann.).