STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V.
GROSS STATE BANK:   EDGAR R. JOHNSON, RECEIVER,
APPELLEE:   E. A. OEHLERKING, INTERVENER,
APPELLANT.

FILED FEBRUARY 17, 1925.   No. 24132.

1.  **Banks and Banking:** GUARANTY FUND: DEPOSITS.   "In order to
create a deposit which will be protected by the guaranty law,

120        NEBRASKA REPORTS.        [VOL. 113

State, ex rel. Spillman, v. Gross State Bank.

as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law." *State v. Farmers State Bank*, 111 Neb. 117.

2. ———: ———: ———. "The law will look through all semblances and forms to ascertain the actual facts as to whether there has been a *bona fide* deposit, and, if not, the guaranty fund does not protect the transaction, no matter how it may be evidenced." *State v. Farmers State Bank*, 112 Neb. 380.

APPEAL from the district court for Boyd county: ROBERT R. DICKSON, JUDGE. *Affirmed.*

*Hainer & Flansburg,* for appellant.

*Fred S. Berry, W. T. Wills* and *C. M. Skiles, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD, THOMPSON and DEAN, JJ.

DEAN, J.

The Gross State Bank, hereinafter called the Gross bank, closed its doors January 26, 1923, and a receiver was subsequently appointed pursuant to a petition filed therefor, in the district court in and for Boyd county, by the attorney general. The claimant, E. A. Oehlerking, hereinafter called claimant, filed a petition in intervention to compel the payment of five certificates of deposit, from the bank depositors guaranty fund, which were issued by the Gross bank in the sum of $1,000 each, bearing 5 per cent. annual interest. The court allowed the claim as a general claim against the bank, but disallowed it as a claim against the bank depositors' guaranty fund, on the ground that the certificates did not represent a deposit within the meaning of the bank depositors' guaranty fund act. Comp. St. 1922, section 7982. From this judgment claimant has appealed.

During all the time material to the issues involved in this suit, Frank W. Woods was president of the Gross bank, and also president of the First National Bank of Spencer,

VOL. 113]  JANUARY TERM, 1925.  121

State, ex rel. Spillman, v. Gross State Bank.

hereinafter called the Spencer bank. L. G. Kloke was vice-president of the Gross bank and cashier of the Spencer bank. E. C. Hamilton was cashier of the Gross bank. Both banks were located in Boyd county, about ten miles apart, and both subsequently failed. Herbert, Jurgensen & Woods is a partnership engaged in the insurance business at Lincoln. Clayton Woods, a member of the firm, is a son of Frank W. Woods, who is the above named president of both banks. · The facts disclose that the banks were closely interlocked in business affairs. And this may readily be seen from the duplicate roll of officers.

March 13, 1922, eight $500 certificates of deposit were issued by the Gross bank and made payable to Herbert, Jurgensen & Woods. On the same day additional certificates of deposit were issued by the Gross bank, making in all, for that date, a total issuance of $10,000 in such certificates.

In respect of the facts attendant upon the actual issuance of the certificates, Mr. Hamilton testified that Mr. Kloke called him up by telephone and asked him if he wanted a $10,000 deposit, to which Hamilton says he made this reply: "I asked him if he wanted me to fall dead." From Hamilton's evidence it appears that Kloke, as Hamilton's superior officer, thereupon directed him to issue the above eight certificates, in sums of $500 each, and to make them payable to Herbert, Jurgensen & Woods, hereinafter called the Lincoln firm, "and charge First National Bank of Spencer's account," and that he, Kloke, "would credit our account over there." Pursuant to the foregoing instructions, Hamilton issued the certificates of deposit, bearing date of March 13, 1922, payable to the Lincoln firm, as directed by Mr. Kloke. The eight certificates were forwarded to the payee firm by mail, at Lincoln. The first or second day thereafter the Gross bank received a "credit advice" card from the Spencer bank, dated March 14, 1922, and Hamilton says he "considered" the above credit as the "deposit" fund against which he was instructed to issue the certificates of deposit. The advice card reached the

Gross bank the evening of the 14th or the morning of the 15th of March, 1922.

The Lincoln firm disposed of the eight $500 Gross bank certificates, above mentioned, and an additional $1,000 Gross bank certificate, to claimant. Thereupon the Lincoln firm requested the Gross bank to issue five $1,000 certificates to claimant, the eight original $500 certificates being returned by the Lincoln firm. The five above $1,000 certificates were duly issued and bear date of March 17, 1922.

Mr. Kloke corroborated Mr. Hamilton's evidence, in that he testified that he "told him (Hamilton) to issue $10,000 in certificates of deposit to Herbert, Jurgensen & Woods." When Kloke was asked if the Lincoln firm placed any money in the Spencer bank, March 13, 1922, he answered: "Not any cash directly in the First National Bank of Spencer. No, sir. * * * Q. Do you know (claimant) A. E. Oehlerking? A. I do not. Q. Did A. E. Oehlerking ever place any money in your bank on March 17, 1922? A. Not any cash directly. No, sir. Q. Now, then, on March 14 you made a book entry credit of $10,000 on the books of the First National Bank of Spencer to the Gross State Bank, didn't you, Mr. Witness? A. I wouldn't swear to the date; I suppose the records will show that. Q. Well, do you remember of a credit being made on the books of the First National Bank (of Spencer) to the Gross State Bank in connection with the $10,000 in certificates that were issued for Herbert, Jurgensen & Woods by the Gross State Bank on March 13, 1922? A. I suppose our books were closed on that day's business, and from the testimony I heard that date was on the 14th, which indicates it went over into the next day's business. Q. Now, then, in giving the Gross State Bank credit on your books for $10,000, what other charge did you make on your books to balance your books in connection with that transaction? A. Charged the Omaha National Bank, our correspondent. Q. With $10,000? A. Yes, sir. Q. Did the Omaha National Bank on that date put any money in the First National Bank at Spencer? A. I couldn't say on that date; I don't

know what the date of their advice was. Q. This $10,000 you charged the Omaha National Bank with was in connection with these certificates aggregating $10,000? A. Yes, sir. Q. Did you inform the Omaha National Bank anything about that at that time? A. No; that wouldn't be the usual transaction to inform them. Q. Now, answer the question, I don't care anything about the usual transaction. You simply made that charge of $10,000 to the Omaha National Bank without advising them you had made it? A. Yes, sir."

It was stipulated that the claimant paid $4,875 to the Lincoln firm for the certificates, a day or two before March 17, 1922, and that the Lincoln firm sent this money to the Omaha National Bank, and the Omaha bank in turn credited this amount to the Spencer bank March 21, 1922. It was also stipulated that claimant had no agreement with the Gross bank whereby such bank should directly or indirectly pay any interest other than indicated on the certificates of deposit, nor was claimant to pay any of "the discounts that were allowed by Herbert, Jurgensen & Woods," and that such discounts were taken care of by the Spencer bank by its transferring credit to the Gross bank in the amount thereof.

It may be noted that the Lincoln firm, in disposing of the certificates to claimant, allowed a discount of $125. There was a controversy on this point, but the matter was disposed of, under date of March 29, 1922, by the Spencer bank crediting on its books, the discount to the Gross bank.

As tending to show the manner of conducting business, by the Spencer bank and the Gross bank, it may be noted that, after the $10,000 certificates had been issued, March 21, 1922, Mr. Frank W. Woods, as president of the Spencer bank, forwarded to the Gross bank bills payable in a sum approximating $12,000. These notes were practically valueless, except as to a note in the sum of $2,500. In respect of the above notes, the receiver of the bank testified: "Q. Well, what is the fact as to your endeavoring to collect the notes, and whether or not you have been able to col-

lect any of them? A. With the exception of the Woods Credit Company note of $2,500 on which we held a certificate of deposit payable to the credit committee of the Woods Credit Company, which we claim, not any of the notes have been paid or any part of them."

The above notes were owned by the Spencer bank and, by order of its president, Frank W. Woods, were charged on the Spencer bank books against the account of the Gross bank. The attorney general contends, and the proofs sustain him, that this dubious transaction "more than exhausted the paper credit made by the Spencer bank to the Gross bank shortly subsequent to the issuance of the various certificates."

Mr. Hamilton, cashier of the Gross bank, on this point, in answer to interrogatories from the bench, testified:

"Q. Now, Mr. Hamilton, I want to know something. Frank Woods was president of the First National Bank of Spencer at the time you bought these notes. Were you president of the Gross State Bank? A. No, sir. Q. Was Frank Woods its president? A. Yes, sir. Q. And Mr. Kloke was its vice-president? A. Yes, sir. Q. Now, here was a transaction involving $12,000 or $15,000. Now, just what did you have to say about that? Is it true or isn't it true, did Frank Woods send the notes down to you and tell you to take them and you took them? A. Yes. Q. That was it? A. That was the start of it. Q. He simply sent the notes down to you and said give us credit for the notes? A. Yes; he called me over the 'phone, he says I have got some loans, they are a little in excess, I would like to have you carry them. Q. And you took them? A. Yes, sir; and he sent me over $11,675, I think. Q. And you were not supposed to use any independent judgment as cashier of the Gross State Bank about them? A. No; I thought he was president of the bank and wouldn't send me anything that wasn't right. Q. Yes, sir; and he sent them down? A. Yes, sir; and I didn't know anything about the condition of the bank or of Woods until in May when Mr. Guggenmos came there. I had some loans with

them, and he wanted to go over matters, and in going through the notes Guggenmos laid them out. He says, these things are not good, you are broke. Q. Frank Woods had sent them down to you? A. That is the sum and substance of it."

The evidence discloses that both banks were managed, dominated, and controlled by Mr. Frank W. Woods, who was president of both. They were managed much the same as an owner of noncontiguous farms would operate and control his several properties. The business was carried on solely over a private telephone wire. Letters were seldom, if ever, exchanged. The manner of business carried on is disclosed by the transfer of the Spencer bank's worthless notes, under Mr. Woods' orders, from the Spencer bank to the Gross bank. From all the evidence it is apparent that the purported exchange of credits, and collaterals, was ony a thinly veiled pretense, and in no sense did it constitute a deposit within the meaning of the depositors' bank guaranty law. Section 8033, Comp. St. 1922; *State v. Home State Bank, ante,* p. 93.

In respect of the essentials which are required to constitute a deposit, we said in a recent case: "In order to create a deposit which will be protected by the guaranty law, as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law." *State v. Farmers State Bank,* 111 Neb 117.

In the present case the facts, when considered in their entirety, clearly disclose an unlawful design to spoliate the bank depositor's guaranty fund. It is not even pretended that the claimant, or that Herbert, Jurgensen & Woods, made a deposit in the Gross bank at any time. The credit which was pretended to be extended by the Spencer bank to the Gross bank, even if it was at any time a valid credit, was promptly exhausted when Mr. Woods ordered the cashier of the Spencer bank to unload a col-

lection of worthless notes, upon the crippled and failing Gross bank, which were taken from the already depleted coffers of the Spencer bank. And this under the personal order of the man who was president of both banks, at a time when both were about to break on the rocks by reason of culpable mismanagement. It seems to us that the scheme, device, or plan of the officers of the two banks, working under Woods' orders, was one entire, continuous and connected transaction, and was unlawful from its inception to its close.

The record, when viewed impartially, discloses a state of facts which demonstrates that the guaranty fund is not liable. *Iams v. Farmers State Bank,* 101 Neb. 778; *State v. Banking House of A. Castetter,* 110 Neb 564. See, also, *Fourth Nat. Bank v. Wilson,* 110 Kan. 380. A deposit may be effected by depositing money in one bank to the credit of another bank, but it presupposes that absolute control of the fund is vested in the bank to which credit is given. *State v. Home State Bank, ante,* p. 93.

In a recent case this was aptly said: "The law will look through all semblances and forms to ascertain the actual facts as to whether there has been a *bona fide* deposit, and, if not, the guaranty fund does not protect the transaction, no matter how it may be evidenced." *State v. Farmers State Bank,* 112 Neb. 380.

Reversible error has not been shown. The court did not err in overruling the application for a new trial. The judgment is right and is

AFFIRMED.