State, ex rel. Spillman, v. Atlas Bank.

---

STATE, EX REL. O. S. SPILLMAN, V. ATLAS BANK OF NELIGH: PIONEER INSURANCE COMPANY, CLAIMANT, APPELLANT: EMIL FOLDA, RECEIVER, APPELLEE.

FILED OCTOBER 26, 1925. No. 24603.

Evidence examined, and *held* to support the finding and judgment of the trial court.

APPEAL from the district court for Antelope county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Field, Ricketts & Ricketts* and *Williams & Kryger,* for appellant.

*C. M. Skiles, Lyle E. Jackson, Fred S. Berry* and *Charles H. Kelsey, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

MORRISSEY, C. J.

The question before us for determination is whether or not a certificate of deposit issued by the Atlas Bank of Neligh, now insolvent, and held by the Pioneer Insurance Company should be made a charge against the depositors' guaranty fund.

In May, 1921, the bank, being in urgent need of $7,000, the president of the bank enlisted the services of one Mc-Allister and agreed with him that, if he should procure $7,000 on certificates of deposit to be issued by the bank, the bank would pay him, McAllister, $1,000. McAllister informed the president of the insurance company of the offer made by the bank and an arrangement was made between them under which the offer of the bank was accepted. The bank then issued seven certificates of deposit, each of the sum of $1,000, bearing interest at the rate of 5 per cent. per annum, payable to the insurance company, maturing one year after date, and one certificate of deposit for $1,000 under the same terms and conditions as the foregoing, but payable to McAllister. These certificates were delivered to the insurance company, or its president, and the insurance company issued its draft for $7,000 payable to the bank, while the president of the insurance company paid McAllister $500 for McAllister's interest in the certificate of deposit which had been made payable to him, it apparently having been agreed that the $1,000 commission should be divided between them. McAllister indorsed and delivered the certificate of deposit to the president of the insurance company, who in turn delivered it to the insurance company, receiving therefor $1,000. When the certificates of deposit matured, the bank, still being hard pressed for money, arranged with the insurance company for an extension of time of payment and new certificates were issued. Ultimately all of the certificates were paid in full except the one in suit, which is a renewal of one of the certificates originally issued in the name of the insurance company, the certificate which had originally been issued in the name of McAllister having been paid. The bank became insolvent and a receiver was appointed to wind up its affairs. This claim was filed by the insurance company with the receiver, who refused payment and filed objections to its allowance by the court.

By these objections the following questions were put in issue, namely: Does the certificate represent a good faith

deposit in the insolvent bank made without the payment of a bonus for the deposit, or the payment of interest, or an agreement to pay interest, in excess of the maximum rate of 5 per cent. per annum? After a full hearing, the trial court found that the certificate of deposit "is the renewal of a former certificate which was part of a transaction in which certificates of deposit aggregating in amount $8,000 were issued; that said certificates were issued in pursuance of an agreement whereby claimant was to pay $7,000 in cash and receive in certificates $8,000; and the court further finds that said claim should be disallowed as one payable from the depositors' guaranty fund, but that said claim should be allowed as a general claim only.".

Claimant excepts to the finding and judgment of the court, and argues that claimant paid full value for the seven certificates originally made payable to it, and that that transaction was separate and distinct from the transaction negotiated by its president and McAllister whereby for $500 claimant's president secured a certificate in the sum of $1,000. It is urged that, as the certificate originally issued to McAllister had been paid, that transaction should be dismissed from our consideration. In this connection it may be noted that, when the eight certificates of deposit were issued and the draft for $7,000 issued by the insurance company was received by the bank, the bank books were not made to show the payment of any commission to any person, and, of course, they did not then balance; however, there was then placed in the bank a note bearing the signature of one Pitzer for the sum of $1,000, without any credit being extended to Pitzer, and thus the books of the bank were made again to balance. At the time of the hearing on this claim, the Pitzer note had not been paid, although it was long past due, and this record does not show whether Pitzer is solvent or insolvent, but in any event, in the absence of a consideration for the note, we cannot well assume that its collection can be enforced. Furthermore, the testimony conclusively shows that the certificate made payable to McAllister was issued as a bonus, or commission,

to procure the $7,000 deposit, and was not made in consideration of the Pitzer note.

, It being apparent that the certificate which was made payable to McAllister did not represent a genuine deposit, we must now determine whether or not its issuance was so interlocked with the issuance of the certificates made payable directly to the insurance company as to make the issuance of the eight certificates a single transaction. We think the testimony of the president of the insurance company, given on cross-examination, answers the question in the affirmative. He testified as follows: "Q. You did get $500 from some one for your services in connection with that $7,000 or $8,000 transaction? A. I would answer that question by saying that I bought $8,000 of C/D's when money was awfully tight for $7,500."

It is stipulated that all certificates drew the maximum rate of interest allowed under the law, and, when to that rate is added the $1,000 which was issued by way of bonus or premium, there is no escaping the conclusion that the effect of the transaction was to enable the holders of the certificates to draw a greater rate of interest than 5 per cent. or to permit them to withdraw money from the bank in an amount largely in excess of the amount deposited. It is clear that the claim in suit does not fall within the protection of the guaranty fund. *State v. Farmers State Bank,* 111 Neb. 117; *State v. Farmers State Bank,* 112 Neb. 380; *State v. Brown County Bank,* 112 Neb. 367; *State v. Banking House of A. Castetter,* 110 Neb. 564; *Iams v. Farmers State Bank,* 101 Neb. 778.

The judgment of the district court is

AFFIRMED.