702 NEBRASKA REPORTS. [VOL. 115

State, ex rel. Spillman, v. Farmers State Bank.

STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, AP-
PELLANT, V. FARMERS STATE BANK OF ADAMS, APPELLANT:
JEANNETTE MCCARTY ET AL., APPELLEES.

FILED JULY 1, 1927. No. 25240.

1. Banks and Banking: MONEY PAID BY CHECK. It is self-evi-
dent that money deposited in a bank and paid out by the bank
pursuant to the depositor's bank check in the regular course of
business is, ordinarily, no longer subject to the control of the
depositor.

2. ———: GUARANTY FUND: DEPOSIT. A state bank was in
failing circumstances and an assessment of 50 per cent. was
therefore made on the several shares of stock. About a year
and a half thereafter the bank failed and a receiver was placed
in charge. Thereupon certain stockholders filed claims for
the recovery of the money respectively paid by them under the
assessment on the alleged ground that it was a deposit. The
receiver disallowed the claims. On appeal the district court
ordered the claims paid out of the depositors' guaranty fund.
*Held*, that the court erred in ordering the claims paid from the
fund in question.

3. ———: ———: ———. Where, under the provisions of
section 39, ch. 191, Laws 1923, funds are deposited in a state
bank upon any collateral agreement or condition other than
an agreement for length of time to maturity and rate of
interest, such deposit is not protected by the depositors' guar-
anty fund.

4. ———: ———: POWERS OF STATE OFFICERS. A state bank
officer cannot lawfully take from nor add to the provisions of
section 39, ch. 191, Laws 1923, which provides under what cir-
cumstances claims may be paid out of the bank depositors' guar-
anty fund.

5. ———: ———: ———. The custodians of the depositors'
guaranty fund cannot lawfully order that payments be made
to depositors of money in a failed bank out of the depositors'
guaranty fund other than the payments provided in section 39,
ch. 191, Laws 1923.

6. Appeal in Equity: MOTION FOR NEW TRIAL. A receivership is
an equity proceeding and an appeal in equity causes will lie to
this court from the final order or judgment of the district court
in the absence of a motion for a new trial.

State, ex rel. Spillman, v. Farmers State Bank.

APPEAL from the district court for Gage county: WILLIAM J. MOSS, JUDGE. *Reversed.*

*C. M. Skiles* and *G. E. Hager,* for appellants.

*Robert J. Greene* and *Lloyd E. Chapman, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

This suit is prosecuted in the name of Mrs. Jeannette McCarty, on behalf of herself and Melvin E. Darnell and the Stearns-Knight Auto Sales Company, as claimants, seeking to recover from the bank depositors' guaranty fund the aggregate sum of $1,750 which it is alleged was severally deposited by claimants in the now defunct Farmers State Bank of Adams, while it was a going concern, on or about January 15, 1924, and of this aggregate sum Jeannette McCarty and Melvin E. Darnell each claimed $250, and the Stearns-Knight Auto Sales Company claimed $1,250, as their respective shares of the deposits. All claimants are stockholders and they paid the money in suit over to the bank as an assessment on their respective shares of stock. Darnell and the auto company severally assigned their respective claims to Mrs. McCarty, the consolidation of funds being so made, as alleged, solely to save costs of litigation. There is no dissension among the claimants. The suit arose in Gage county. In defense of the guaranty fund, the state contends that the money so paid over to the bank was not in any sense a bank deposit within the meaning of the law. The district court found against the state and adjudged that the claims were all deposits and that all claimants should be severally paid the amount of their claims out of the bank depositors' guaranty fund, with lawful interest thereon. The state, by the attorney general, has appealed.

It appears that on or about June 9, 1925, the bank in suit, hereinafter called the bank, was adjudged insolvent

704          NEBRASKA REPORTS.          [Vol. 115

State, ex rel. Spillman, v. Farmers State Bank.

and E. J. Dempster was appointed receiver. September 26, 1925, the receiver filed objections to the allowance of the consolidated claim, and all of its constituent parts, "either as a general claim or as a claim entitled to priority or payment out of the guaranty fund." The state contends, as above pointed out, that claimants voluntarily paid the money to the bank for its benefit under certain resolutions regularly adopted for a special assessment on the bank stock. In respect of the action of the stockholders and the directors in the matter of the assessment the record discloses the following material facts:

December 20, 1923, at a special meeting of the stockholders of the bank, at which all claimants were present, a motion was made and unanimously carried that an assessment of 50 per cent. be made on the capital stock. On the same day the board of directors of the bank, pursuant to a like motion which was unanimously carried, made an assessment "against the stock of 50 per cent. to take care of bad papers and to give the bank a good working reserve; this assessment to be paid at once and not later than January 15, 1924, as per resolutions on file of this date." And on the same day, namely, December 20, 1923, as tending more clearly, perhaps, to point out with definite certainty the sole consideration and purpose for which the money was to be paid out by claimants and other stockholders, the board of directors unanimously adopted the following resolution:

"Resolved that the capital stock of the Farmers State Bank of Adams, Nebraska, be and the same is hereby assessed fifty per cent. of its face value, such assessments to be paid in money, or notes, or other security to be approved by the board of directors, and that notes and other securities now owned by said bank to the amount of twelve thousand five hundred dollars be selected by the directors of said bank and taken out of the assets of the bank, in lieu of the proceeds of said assessment, and that said notes and security so taken out be assigned and delivered to the cashier of said bank to be held by him in trust for the

use and benefit of the stockholders of said bank, and that said cashier shall reduce said notes and securities to cash or other notes or securities of value, and the proceeds thereof delivered to said Farmers State Bank of Adams, Nebraska, in lieu of other worthless or doubtful notes or securities owned by said bank, and such notes and securities as may be selected by the board of directors, taken from the assets of said bank and delivered in trust to said cashier in trust as aforesaid, and that the proceeds thereof by said cashier received be paid and delivered pro rata to the various stockholders of this bank according to the amount of stock owned by each respectively.

"Further resolved that, if such assessment be not paid on or before the 15th day of January, 1924, each and every share of stock, the assessment against which has not been paid, shall be sold according to law."

Pursuant to the resolutions the claimants paid the money in suit over to the bank in a laudable but futile effort to protect the stock of the bank from depreciation and to avoid the closing of its doors. And it appears to be clearly established that the money of claimants was used by the bank officials in an effort to prevent, or for a time to stave off, the financial collapse of that institution, and it was applied to this expressly definite purpose by the bank officers. Almost a year and a half elapsed between the date when the money was paid by the respective claimants under the assessment to the bank and the date when the doors of the bank were closed by the state department. So that, for about a year and a half the payment so made accomplished the object for which the money was paid and the bank was thereby enabled to remain a going concern for that period. Can the money so paid in and so used and so applied by the bank now be held to have been a deposit of money in the bank which is entitled to the protection of the bank depositors' guaranty fund? This is the question for decision here.

On the direct examination one of the claimants testified that at the stockholders' meeting the claimants were as-

**706**          NEBRASKA REPORTS.          [VOL. 115

State, ex rel. Spillman, v. Farmers State Bank.

sured by A. L. Larson, the cashier, that the money would be returned to them "if every one doesn't make their deposit." It appears that this assurance was made by the cashier to the claimants at the meeting where they were all assembled. On the cross-examination the above witness further testified: "Q. You didn't go down to make a deposit in the bank? A. Not for an ordinary deposit, but that is the way I understood it at the time. * * * Mr. Larson assured me, for I asked him the question frankly, whether or not I would get my money back, and he says, 'Yes, unless every one deposits', and I understood they were going to use it and make the bank safe. That was the condition, and soon I made up my mind to write my check. * * * Q. You didn't understand that you were to get your check back? A. Yes; I understood I was to have my money back in case every one did not pay their assessment. * * * Q. You got your (canceled) check back? A. I did; I have searched for it and I have it." The evidence and the exhibits show that the two $250 checks of the depositors were written and canceled January 15, 1924, and the $1,250 check was dated January 7, 1923, and canceled January 18, 1924. To substantially the same effect, in respect of representations and the like, was the evidence of the other claimants. All the evidence of claimants, however, discloses that they felt they were deceived by the representations of the cashier and of the president of the bank, and that they believed and acted on the deceptive statements so made and were thereby induced to write their checks and pay over their money to the bank. Is argument required to establish that the money when checked out of the bank no longer stood to the credit of the claimants and was then no longer subject to their control? The resolution plainly provides that the assessment of 50 per cent. was definitely made against the stock "to take care of bad papers and to give the bank a good working reserve."

Section 39, ch. 191, Laws 1923, of the bank depositors' guaranty law, so far as applicable here, expressly provides:

"No state bank shall receive any deposit upon any col-

lateral agreement or condition other than an agreement for length of time to maturity and rate of interest, and no money deposited in any such bank, upon any such collateral agreement or condition, shall be guaranteed by the depositors' guaranty fund."

Clearly, claimants violated both the letter and the spirit of section 39 when they made a "collateral agreement or condition" to pay over their money to the bank on a promise by cashier Larson that it would be returned under the conditions that are disclosed by the record. That he greatly exceeded his authority is shown by his own evidence. He testified that he told the stockholders that they would have to raise the money to pay the assessment on their stock, and that to do this "there was only one right thing, and that was to pay in the 50 per cent. assessment on the stock and take out the bad paper," and that this bad paper was to be held in a separate fund and collected afterwards. He also testified: "Q. Were any of these stockholders given any deposit slip or any evidence of any deposit they were making in the bank at that time? A. They were given a receipt." And it fairly appears from the cashier's evidence that the president of the bank was the owner of 25 shares of stock, and that he did not pay in his assessment, and that he, the cashier, did not pay his assessment because the president did not pay his. In this both the cashier and the president deceived their associates.

A bank officer cannot take from nor can he add to the provisions of section 39 of the guaranty law above cited. The only agreement that a bank officer can make with a depositor is plainly stated in the act. It is, of course, unthinkable that the legislature created the depositors' guaranty fund with the intention that its lawful custodians should use this fund as a clearing house for the payment of bad debts or to reimburse the losses of imprudent investors. *Iams v. Farmers State Bank*, 101 Neb. 778; *State v. Security State Bank, ante*, p. 667.

Claimants contend that this court is without jurisdiction

from the fact that a motion for a new trial was not filed. But a receivership is an equity proceeding. 2 Smith, Receivers (Tardy) (2d ed.) sec. 593. In *Swansen v. Swansen,* 12 Neb. 210, in an opinion by Judge Maxwell, this court held: "An appeal in equity causes will lie to the supreme court from a final order or judgment of the district court, in which case no motion for a new trial is necessary." And the receiver contends that the claims of Darnell and the auto sales company were not prosecuted in the name of the real party in interest. But, in view of our decision, we do not find it necessary to decide this question. Other objections have been raised that do not go to the merits and we do not find it necessary to discuss them here. The conclusion is that the money of the claimants, so paid, was not a deposit within the meaning of the above cited bank depositors' guaranty law and it does not therefore come within its protection. *State v. Gross State Bank,* 113 Neb. 119, and cases there cited.

The judgment is reversed and the cause is remanded for further proceedings.

REVERSED.