STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, APPELLEE, V. SECURITY STATE BANK OF EDDYVILLE, DEFENDANT: OMAHA LIFE INSURANCE COMPANY, CLAIMANT, APPELLANT.

FILED NOVEMBER 28, 1927. No. 25085.

*Gurley, Fitch & West,* for appellant.

*C. M. Skiles* and *J. L. Cleary, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

THOMPSON, J.

The record shows that the Security State Bank of Eddyville was a corporation organized for the purpose of and was doing a commercial banking business, as indicated by its name; that on its becoming insolvent a petition for the appointment of a receiver was duly lodged in the district court for Dawson county; that a receiver was appointed on or about September 17, 1923, and entered upon the discharge of his duty, and in the course of administering such trust the Omaha Life Insurance Company filed a claim in

October, 1923, alleging that there was a balance due it of $413.01 on its general checking account. To the allowance of such claim, other than as a general claim against the trust, the receiver objected, for the reason, in substance, that such deposit was made and received under a collateral agreement which contravened section 39, ch. 191, Laws 1923, passed with an emergency clause and becoming effective April 7, 1923, which provides:

"No state bank shall receive any deposit upon any collateral agreement or condition other than an agreement for length of time to maturity and rate of interest, and no money deposited in any such bank, upon any such collateral agreement or condition, shall be guaranteed by the depositors' guaranty fund."

After such objection was filed, the insurance company lodged what it called an answer, but in effect, not including the denials therein contained, it was an amendment of its original claim, which amendatory part was as follows: "Alleges that said money was deposited by the Omaha Life Insurance Company in said bank in good faith and without any agreement of any kind between the said Omaha Life Insurance Company and the said bank other than the agreement that is always implied when a person deposits money in a bank in the general course of business. Wherefore, said Omaha Life Insurance Company prays that its claim may be allowed as a prior claim and as a claim entitled to payment from the guaranty fund of the state of Nebraska."

On the issues as thus presented, the case came on for hearing upon an agreed statement of facts, and the following judgment, in substance, was entered: That the claim of $413.01 be allowed as a general claim against the bank, but that it be disallowed as a claim entitled to priority and to payment out of the guaranty fund.

The claimant interposed a motion for a new trial, presenting as grounds therefor, in substance, that the judgment of the court is contrary to the evidence, and to the law applicable to a case of this nature. This motion was overruled, and claimant appeals, seeking reversal for the rea-

sons substantially as indicated by the above motion.

Before considering the evidence in this case, and the question of the burden of proof, it might be well to state that, in this class of actions, "The receiver takes and holds the bank assets, as to liens, rights and liabilities, as they exist at the time the business is turned over to him, to be administered for the uses and benefits of the creditors and stockholders of the institution. * * * The receiver is at all times an officer of the court, subject to its orders and directions, an agent, the scope of whose authority is limited by law." *State v. Farmers & Merchants Bank of Morrill,* 114 Neb. 378-381. Thus, it will be seen that the receiver, as such, is without authority to impose a liability upon the guaranty fund.

Further, section 39, ch. 191, Laws 1923, involved in this case, was repealed, without a saving clause, by section 18, ch. 30, Laws 1925, which became effective April 1st of that year. However, such repeal did not affect the matters involved herein, as section 3097, Comp. St. 1922 (which section took effect February 21, 1873, after *Bennet v. Hargus,* 1 Neb. 419, was decided) provides: "Whenever a statute shall be repealed, such repeal shall in no manner affect pending actions founded thereon, nor causes of action not in suit that accrued prior to any such repeal, except as may be provided in such repealing statute." This section was construed by us in *Lower v. State,* 109 Neb. 590, wherein we gave it a literal interpretation. It follows that our holding in *Globe Publishing Co. v. State Bank of Nebraska,* 41 Neb. 175, filed June 6, 1894, in so far as the same conflicts with our conclusion herein, and with *Lower v. State, supra,* is overruled.

As heretofore denoted, the only evidence material to the questions here presented is that of an agreemnt as to facts, the material parts of which are as follows: That the claim of the insurance company represents a balance shown on the books of the bank as credited to it on a checking account, as of the date of the closing of the bank; that exhibit 1 is a record of the bank showing the deposits of such insurance

company from February 27, 1922, to August 6, 1923, being a record of debits and credits; that letters, exhibits 2, 3, 4, and 5, passed between the bank and the insurance company, as they each indicate, and that each thereof refers to the account in question. This account, as it was at the time of the appointment of the receiver, was evidenced by exhibit 1, which reflects transactions indicated by the debits and credits covering nearly $2,000, and left remaining at the time of the closing of the bank, in appearance, the sum of $413.01.

Exhibit 2 purports to be a letter written by the insurance company to the bank, as follows: "February 25, 1922. Security State Bank, Eddyville, Neb. Friend O'Meara: Inclosed find our check for $1,000 which please place on open account. This is sent at the request of our Mr. Trumbo. He tells me he will call on you later and anticipates doing a nice business in connection with yourself. I appreciate this connection very much as you will probably recall I visited you in December. Yours very truly, E. M. Searle, Jr., President."

Exhibit 3 is a letter from the bank to the insurance company, as follows: "October 17th, 1922. Omaha Life Insurance Co., Omaha, Nebraska. Gentlemen: We are low on our reserve today and we were wondering if you could accommodate us with a deposit of say $2,000 for thirty or sixty days. The crops and live stock are not moving the way they should here on account of the shortage of cars. We can send you a time certificate or place it on open account at 5% interest. Yours very truly, Cashier."

Exhibit 4 purports to be in answer to exhibit 3, and is as follows: "October 23d, 1922. Security State Bank, Eddyville, Nebraska. Friend O'Meara: I have your letter of the 17th, requesting a deposit of $2,000. The only way I could comply with this request would be to draw money from some other country bank; then I would have a deuce of a time explaining why I did so to the other fellow. We are making several farm loans which is using all of our money available at the present time. However, I am inclos-

ing you our check for $500 which please place to open account as per your letter. Yours very truly, E. M. Searle, Jr., President."

Exhibit 5 is a letter from the insurance company to the bank, as follows: "February 17, 1923. R. O'Meara, Cashier, Security State Bank, Eddyville, Neb. Dear Mr. O'Meara: We have maintained a deposit in your good bank for some time past. This was either placed with you or increased on account of Mr. John F. Trumbo, who was working in your vicinity at that time. Will you please state to me, using the self-addressed stamped envelope enclosed, whether Mr. Trumbo's services for us in your vicinity were satisfactory and also whether or not our method of handling the deposit and maintaining it with you has been to your advantage and to your satisfaction? Yours very truly, H. E. Worrell, Sec'y-Treas."

Under the record thus submitted, has the claimant furnished proof entitling it to share in the guaranty fund?

As we conclude, one seeking to recover, as the claimant in this case, carries the burden of furnishing proof, not only that cash or its equivalent was deposited in the bank, but, further, that such deposit was made under conditions and circumstances which do not transgress specific limitations of the bank guaranty law.

In thus concluding, we are in harmony with our previous holdings on the question. The purpose and scope of the bank guaranty law was announced by us in *Iams v. Farmers State Bank*, 101 Neb. 778-782, as follows: "The act creating the depositors' guaranty fund was intended by the legislature to be a shield of protection against loss to those who in good faith deposit their money in state banks in compliance with the terms of the statute. Unless its provisions are fairly construed and impartially enforced, this salutary law might become a destructive sword in the hands of unscrupulous persons having unlawful designs on the depositors' guaranty fund." The law thus expressed has been approved and followed by many courts, and has been in no manner modified by us.

In *State v. Banking House of A. Castetter*, 110 Neb. 564-567, we, in effect, approved the above quotation, and further said: "Speaking generally, to create a deposit, within the meaning of the statute, money or the equivalent of money must in intention and effect be placed in or at the command of the bank, under circumstances which do not transgress specific limitations of the bank guaranty law"—which was virtually a quotation and adoption of the law as announced in *Fourth Nat. Bank v. Bank Commissioner*, 110 Kan. 380.

This same language was adopted and approved by us in *State v. Farmers State Bank of Halsey*, 111 Neb. 117, and in that case, at page 126, we further held: "They (the certificates) were issued in violation of law, and cannot be considered as deposits within the meaning of that term as used in the guaranty law."

In *State v. Peoples State Bank*, 111 Neb. 126, 132, we said: "The guaranty fund is not liable beyond the terms of the statute which is in point of law the contract. The guaranty fund is a creature of the statute, and the legislature, by fair construction of the statute, has fixed the conditions upon which deposits in banks are protected. The guaranty fund is not available as security in every case where money is put into a bank. Its liability extends only to those transactions which under the law may be said to be deposits." While the conclusion arrived at in the case last cited was overruled by us on rehearing (111 Neb. 136), the language above quoted was in no manner criticised or modified, is forceful, and we adopt it as a part of this opinion.

The above holdings in regard to creating a deposit were readopted by us in *State v. Farmers State Bank of Winside*, 112 Neb. 380, in which latter case we further held: "In determining whether a transaction creates a 'deposit' within the protection of the guaranty fund, the law will look through all semblances and forms to ascertain the actual facts as to whether there has been a *bona fide* deposit, and,

if not, the guaranty fund does not protect the transaction, no matter how it may be evidenced."

Then, again, in *Rogers v. National Surety Co., ante,* p. 170, we held: "The depositors' guaranty fund is a creation of statute, possessing such rights and subject to such liabilities as the legisature has provided; the liabilities thus imposed thereon are analogous to that of a 'guarantor' as distinguished from a 'surety.'" That is, under the statute the guaranty fund is an independent entity, and only those who bring their right of recovery within the statutory limitations are entitled to share therein.

It must further be remembered that, as to the burden of proof, the law was announced in *State v. Farmers State Bank of Halsey,* 111 Neb. 117, 122, as follows: "A holder of a certificate of deposit in a bank who seeks to hold the guaranty fund liable for its payment must show that the transaction leading up to the issuance of the certificate was such that the law holds the guaranty fund liable for its payment." This holding was reaffirmed by us in *Kuhle v. Farmers State Bank of Cotesfield,* 115 Neb. 648, and made syllabus No. 1 thereof, our last expression on the subject. In the *Kuhle* case we further held by paragraph 3 of the syllabi: "Neither banks nor their officers can impose a liability upon the guaranty fund; such obligation is one fixed by statute alone."

Thus, it will be seen that the right to participate in this beneficent provision of the statute, to wit, the depositors' guaranty fund, is not open to a claimant merely by reason of his holding a certificate of deposit issued by the bank in question, or that the books of the bank on their face show a deposit to have been made by him, or that he actually made a deposit of money or its equivalent in such bank. Such claimant must, by his proof, go farther and show that the deposit was one made under facts and circumstances which do not transgress specific limitations of the law giving rise to such guaranty fund.

Considering the record as a whole, we must conclude that the claimant has not met the burden cast upon it by

the statute. In this we are strengthened by the fact that ✻ the letters, heretofore quoted, indicate that a collateral agreement was had between the bank and the claimant, which contravened section 39, ch. 191, Laws 1923.

Our attention has been called to *State v. Farmers State Bank of Bushnell,* 114 Neb. 826, wherein in the course of the opinion the words *"prima facie"* are used in discussing the evidence. It may be said, however, that this was simply part of the argument leading up to the final conclusion reached; but it is not controlling in arriving at the conclusion therein, as both the claimant and the representative of the bank testified that the transaction was one in the ordinary course of business, and without a collateral agreement.

The judgment of the trial court is right, and is,

AFFIRMED.

GOOD, J., dissents.