STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, APPELLEE, V. AMERICAN STATE BANK ET AL., APPELLEES: BANKERS AUTOMOBILE INSURANCE COMPANY, APPELLANT.

FILED MAY 26, 1924.   No. 22762.

**Banks and Banking:** GUARANTY FUND: DEPOSIT. Where a bank in good faith receives negotiable paper from a customer and, in place of paying the money over the counter at the time the notes are negotiated, issues to him a certificate of deposit payable at a future date, no fraud or collusion being shown, the legal effect is the same as if the money itself had actually been placed upon deposit, and, as respects the bank guaranty fund, the deposit evidenced by the certificate so issued stands upon the same footing as any other deposit.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Reversed.*

*Burkett, Wilson, Brown & Wilson,* and *Sterling F. Mutz,* for appellant.

*Claude S. Wilson, Albert S. Johnston* and *F. B. Sidles,* contra.

Vol. 112]        JANUARY TERM, 1924.              183

State, ex rel. Davis, v. American State Bank.

Heard before MORRISSEY, C. J., LETTON, DEAN and DAY, JJ., and REDICK, District Judge.

LETTON, J.

The American State Bank of Lincoln is now insolvent and is in the hands of a receiver. A claim, based upon a certificate of deposit for the sum of $13,000 issued by the bank and payable to the Bankers Automobile Insurance Company of Lincoln, was filed with the receiver for allowance. He refused to allow or pay the same. In the meantime the insurance company became insolvent and was taken in charge by the department of trade and commerce of this state, under special agent Whitney. A hearing was had in the district court, where the receiver filed objections to the allowance of the claim. The court found that the certificate was a just and proper claim against the bank, but "is not a valid claim to be paid out of the state guaranty fund, since it does not represent any actual deposit of money or its equivalent." The insurance company has appealed.

There is practically no conflict in the testimony. The certificate of deposit upon which the claim is based was issued by the bank and delivered to George W. Woods, cashier of the Lincoln State Bank, of Lincoln, on June 18, 1921. It was given as part payment upon the amount due upon two certificates of deposit, maturing on that date, which had been issued to the insurance company on April 18, 1921. The Lincoln State Bank held these certificates as collateral security to a loan to the insurance company. When the bank accepted these certificates as collateral they were assured by Mr. Whitney, the agent of the department of trade and commerce, in charge of the insurance company, and by Mr. Hart, the head of that department, and who was also the head of the banking department of the state, that there was no defense against them and they would be paid at maturity. When they were then presented for payment, the cashier and managing officer of the bank and Mr. Hart requested Woods to accept part payment in money and take a renewal certificate for a part of the amount due on the

184          NEBRASKA REPORTS.          [VOL. 112

State, ex rel. Davis, v. American State Bank.

certificates. There being no dispute or question as to the validity of the obligations, Woods accepted the present certificate as a renewal of one and was paid the balance of the amount due, including interest. The certificate was placed with the other collateral in the Lincoln State Bank. The insurance company afterwards paid its note, and the certificate was delivered to that company.

It was stipulated that suits have been brought by the bank and by the receiver upon some of the notes taken by the bank in exchange for the original certificates of deposit, and that the makers are defending upon the ground that these notes were obtained by fraud and that the bank is not a holder in due course.

Maixner, who was then the president of the insurance company, testified that he conducted the transaction with Mr. Dwiggins, the president of the bank, whereby the original certificates were issued; that at that time he was the owner of the promissory notes for which the certificates of deposit were issued, and the insurance company had no interest in them. The real facts seem to be that Maixner had made a contract with the insurance company at the time of its organization whereby he was to float the stock of the corporation and receive the 10 per cent. promotion fee allowed by the insurance department of the state; that the agreement was that he should underwrite $250,000 of the common and preferred stock of the insurance company and was to place in the treasury of the company $100,000 in securities. To comply with this contract Maixner, who was or had been president of the State Bank of Ceresco, had apparently procured to be issued to himself without consideration a certificate of deposit of that bank for $25,000. This he had delivered with other securities to the insurance company, and it was in order to take up this spurious certificate that he negotiated the notes and took in exchange the original certificates of deposit. He procured these to be issued in the name of the insurance company and then delivered them to it to take up the Ceresco bank certificate. He testified that as an officer of the in-

VOL. 112]  JANUARY TERM, 1924.  185

State, ex rel. Davis, v. American State Bank.

surance company he had repeatedly taken notes belonging to the insurance company to the bank and received in exchange therefor certificates of deposit payable to the insurance company, the maturity of which was invariably fixed at a later time than the maturity of the notes, and that the understanding was that if the notes were not paid at maturity they would either be paid or other notes substituted therefor, and that this was the understanding as to the notes indorsed and delivered by him at the time the original certificates were issued. Both Maixner and Dwiggins testified that there was no agreement that the certificates of deposit should not be cashed until the notes had been paid. The evidence is that all notes negotiated in the prior transactions of this nature had been paid to the bank. Dwiggins testified that the certificates were issued in the regular course of business, but the maturity was made far enough in advance so that he would be sure the notes would be collected.

Maixner was not a stockholder or officer in the American State Bank. The insurance company has received cash or its equivalent for all of the stock issued to Maixner under the underwriting contract, except for this $13,000.

One of the principal contentions of the state in this case is that, since no money was actually deposited at the time of the issuance of the original certificates, no deposit was made for which the guaranty fund is liable; that it is only liable to depositors, and that the insurance company is not a depositor. In the case of *State v. Banking House of A. Castetter,* 110 Neb. 564, decided since the briefs in this case were filed, it is said: "We think the presence of the actual money is not a prerequisite to a deposit. If I discount a note at a bank and the proceeds thereof are placed to my credit, no actual money passes, but it could not be claimed that such proceeds were not a deposit." The opinion states the reasons for the rule and is supported by the following cases: *Fourth Nat. Bank v. Bank Commissioner,* 110 Kan. 380; *Ellis v. State,* 138 Wis. 513; *McCormick v. Hopkins,* 287 Ill. 66; *State v. Shove,* 96 Wis. 1. A pertinent fact is

that the bank could and would have paid the entire amount due at the time the original certificates were presented for payment but for the fact that the head of the banking department requested, in order to accommodate the debtor bank, that the $13,000 certificate be renewed and the time extended for its payment. There is no proof that the notes for which the original certificates were given could not at that time have been sold, or negotiated to some other bank. The fact that, after the general financial situation had become acute, payment of them, or some of them, was afterwards resisted might tend to prove that Dwiggins did not exercise good judgment in taking them, but since like transactions had often been had before without loss to the bank the natural tendency would be to accommodate the customer. The most careful bankers sometimes err in extending credit or in discounting notes. The transaction must be considered as it appeared to the parties at that time, and not as subsequent events may have changed the situation. That which would be good judgment under normal circumstances may prove to have been unwise in the light of extraordinary or unusual subsequent events, such as periods of unlooked-for financial depression. To sum up, where a bank in good faith receives negotiable paper from a customer and, in place of paying the money over the counter at the time the notes are negotiated, issues to him a certificate of deposit payable at a future date, no fraud or collusion being shown, the legal effect is the same as if the money itself had actually been placed upon deposit, and, as respects the bank guaranty fund, the deposit evidenced by the certificate so issued stands upon the same footing as any other deposit.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

Note—See Banks and Banking, 7 C. J. p. 485, sec. 15 (1925 Ann.).