474            NEBRASKA REPORTS.            [VOL. 112

State, ex rel. Davis, v. Farmers State Bank.

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, V.
FARMERS STATE BANK OF BENEDICT: ORMAN S. JEFFERY
ET AL., APPELLEES: C. H. KOLLING, RECEIVER,
APPELLANT.

FILED JULY 18, 1924. No. 23731.

1. Banks and Banking: GUARANTY FUND: DEPOSITS. "In order to create a deposit which will be protected by the guaranty law, as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law." *State v. Farmers State Bank*, 111 Neb. 117.

2. ———: ———: ———. Under the facts shown by the record and set out in the opinion, *held*, that the transaction between the claimants and the bank was a deposit, and entitled to the protection of the guaranty law.

APPEAL from the district court for York county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*W. L. Kirkpatrick* and *C. M. Skiles*, for appellant.

*Bernard McNeny, Gilbert & Perry* and *Stewart, Perry & Stewart, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and THOMPSON, JJ.

DAY, J.

This is an appeal by the receiver of the Farmers State Bank of Benedict from a judgment of the district court allowing the claim of Orman S. Jeffery and Anna M. Jeffery, as a preferred claim against the bank, and directing that it be paid out of the depositors' guaranty fund.

It is the contention of the claimants that they deposited in the Farmers State Bank $39,580 on December 30, 1921, under an agreement with the bank that they were to receive interest on said sum at the rate of 5 per cent. per annum; that they thereby became depositors in the bank; and

that the sum so deposited was under the protection of the guarantee fund. The receiver objects to the allowance of the claim as a preferred claim, and to its payment out of the guaranty fund, but concedes that it is a general claim against the bank. The objection of the receiver is based upon the theory that the transaction between the claimants and the bank, upon which the claim is founded, was a loan to the bank, as distinguished from a deposit in the bank. It is the claim of the receiver that the bank agreed to pay interest at a greater rate than 5 per cent. upon the amount placed in the bank, and therefore the claimants are not entitled to have their claim paid out of the guaranty fund.

Did the transaction between the claimants and the bank constitute a deposit in the bank? In *State v. Farmers State Bank,* 111 Neb. 117, it was held: "In order to create a deposit which will be protected by the guaranty law, as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law."

Section 8008, Comp. St. 1922, in part, provides as follows: "No banking corporation transacting a banking business under this article shall pay interest on deposits, directly or indirectly, at a greater rate than 5 per cent. per annum."

In *Iams v. Farmers State Bank,* 101 Neb. 778, the claimant Iams was the holder of a certificate of deposit issued to him by the bank, regular on its face, and providing for the payment of the principal sum with interest at 5 per cent. Iams had a secret agreement with the bank by which he was to be paid by the bank an additional 1 per cent. It was held that the transaction was not a deposit within the protection of the guaranty law, because it violated specific limitations of the law. We come now to consider the transaction between the claimants and the bank in the light of the principles of law announced in the foregoing decisions.

It appears that on June 7, 1921, W. S. Jeffery, the father of Orman S. Jeffery, with others, had signed a contract of guaranty, whereby the signers jointly and severally guaranteed the payment of any and all indebtedness owing by the Farmers State Bank of Benedict to the City National Bank of York, Nebraska, not exceeding in amount $80,000. W. S. Jeffery died in September, 1921, leaving a considerable estate to be administered. Orman S. Jeffery was one of the heirs, and also administrator of the estate. The claimants were desirous of having the estate of W. S. Jeffery relieved from the obligation of the guaranty. The Farmers State Bank had become indebted to the City National Bank in a large sum of money, and was in need of ready cash to conduct its affairs. An arrangement was entered into between the claimants and F. R. Ward, vice-president of the Farmers State Bank, acting for the bank, by which the claimants were to borrow money on their farm to the extent of $40,000 and deposit the same in the bank upon certificates of deposit drawing interest at the rate of 5 per cent. The loan could not be negotiated for less than 6½ per cent. interest, and in addition thereto a commission to be paid to the brokers procuring the loan. Ward in his individual capacity thereupon agreed that he would personally pay the commission upon the loan, and also the 1½ per cent. interest upon the loan, the same being the difference between the 5 per cent. which the bank agreed to pay and the 6½ per cent. which the claimants were required to pay to secure the loan. On December 3, 1921, the claimants executed a note and mortgage to the Provident Life Insurance Company for $40,000, drawing interest at 6½ per cent. payable semi-annually, and delivered the same to the bank. Thereupon on the same day the bank issued a certificate of deposit to the claimants for $40,000, drawing interest at 5 per cent. and due in six months. At the same time a certificate of deposit for $300 was issued by the bank and delivered to the claimants, due in six months without interest, Ward stating at the time that he had paid for the $300 certificate. On June 3, 1922, the claimants surren-

dered to the bank these two certificates and received another certificate for $40,000, and likewise one for $300, upon the same terms as before. The bank thereupon sent a draft to the Provident Life Insurance Company for $1,300 being the semi-annual interest due upon the loan. The entries on the books of the bank with respect to this payment of interest were improperly recorded, and the books of the bank did not properly record the transaction of the issuance of the certificates of deposit. No record was made of the issuance of the certificates of deposit in the regular course of business of the bank. Before the certificates of June 3, 1922, became due, the bank failed.

It further appears that on or about December 29, 1921, a draft was received by the bank from the First Trust Company of Lincoln for $39,580.56, which represented the proceeds of the loan with accrued interest for 25 days, less the commission charged for securing the loan. No proper entry was made on the books of the bank of this transaction. It does appear, however, that this draft was sent to the City National Bank and proper credit given to the Farmers State Bank for that sum. Whereupon the City National Bank released a large amount of securities held by it for the indebtedness of the Farmers State Bank, and also surrendered the guaranty signed by W. S. Jeffery and others. It is clear that the Farmers State Bank secured the benefit of the draft for $39,580.56. When the claimants discovered the situation as disclosed in the records of the bank they offered to surrender the certificate of deposit for $40,000, and made claim only for $39,580 with interest from the date that sum was received by the bank. If the claimants' version of the transaction be the true one, the bank should have received $40,000, because Ward was to personally pay the commission for securing the loan. It seems clear that the claimants were acting in perfect good faith. If Ward had personally paid to the bank the amount of the commission upon the loan, and the additional 1½ per cent. interest for which the $300 certificate was issued, as he agreed to do, the bank would not have paid more than

5 per cent. upon the amount of money received by it out of the transaction. The mere fact that Ward failed to carry out his part of the agreement does not in our view militate against the rights of the claimants as depositors in the bank. Suppose a person would take money to the bank and deposit it in the regular course of business, but the bank officials failed to make a proper entry of the transaction upon its books. Could it be claimed that the transaction was not a deposit, and that it was not within the protection of the guaranty law? We think not. It was within the province of Ward as an officer of the bank to make an agreement on behalf of the bank to pay 5 per cent. interest on the claimants' money. It was also within his province as an individual to agree to pay the commission on the loan together with the additional 1½ per cent. interest. So far as claimants knew he had kept his agreement.

In support of the contention of the receiver that the bank agreed to pay interest at a greater rate than 5 per cent., an agreement was offered in evidence which was signed by the bank and the claimants. By the terms of this agreement it appears that the bank agreed to pay interest upon the $40,000 in excess of 5 per cent. The claimants, however, testified that they did not read the agreement when it was signed by them, and that it was prepared by Ward from data which they handed him and which they supposed he correctly transcribed. Ward did not testify. Another witness testified that he interviewed Ward with reference to this contract, and that Ward stated in substance that the claimants did not sign the contract they thought they were signing. We think the explanation of the claimants was sufficient to show that the so-called agreement was not knowingly entered into by them.

Considering the entire record, we are of the opinion that the transaction between the claimants and the bank was a *bona fide* deposit on the part of the claimants, and that they might well have made claim to the entire sum of $40,000.

The facts in this case do not bring it within the rule of the *Iams* case hereinbefore cited. In that case the agree-

ment to pay the extra interest was made by the bank.

The trial court allowed the claimants $39,580 with interest thereon at 5 per cent., which was the amount prayed for. We think this judgment is fully sustained by the record, and it is, therefore,

AFFIRMED.

GOOD, J., dissents.

Note—See Banks and Banking, 7 C. J. p. 485, sec. 15 (1925 Ann.).