792 NEBRASKA REPORTS. [VOL. 112

State, ex rel. Davis, v. Wayne County Bank.

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL,
APPELLEE, V. WAYNE COUNTY BANK, APPELLEE:
GOTTLIEB STORZ, CLAIMANT, APPELLANT.

FILED DECEMBER 29, 1924. NO. 23657.

1. **Banks and Banking:** GUARANTY LAW: DEPOSIT. A state bank by soliciting renewals of time certificates of deposit and by appealing to the depositor for additional deposits does not thereby necessarily, within the meaning of the bank guaranty law, change the character of the transactions from deposits to loans.

2. ———: ———: ———. A bank's solicitation, receipt and retention of funds belonging to others are not of themselves conclusive tests of "loans" as distinguished from "deposits" within the meaning of the bank guaranty law.

3. ———: ———: ———. In a controversy between the receiver of an insolvent state bank and a creditor claiming the protection of the bank guaranty law, the question as to whether the claim is based on a deposit as distinguished from a loan should be determined by the facts and circumstances surrounding each particular case.

4. ———: ———: EVASION. Any scheme or subterfuge to procure any part of the bank guaranty fund by evading or cheating the law in the making and receiving of deposits is ineffectual for that purpose.

5. ———: ———: ———. In good faith a person entrusting money to a state bank may enter into a valid agreement to accept therefor time certificates of deposit bearing interest at the rate of 5 per cent. only, and at the same time bind an officer of the bank to pay personally additional interest, without extending the transactions beyond the protection of the bank guaranty law.

6. ———: ———: ———. The misconduct of an officer of a bank in charging to it interest which he agreed to pay with his own money to a depositor is not imputable to the latter, if he had no knowledge of or part in the wrongdoing.

7. ———: ———: LIABILITY. "Where a bank's time certificate of deposit, bearing interest at the rate of 5 per cent., represents actual money left with the bank, a secret oral agreement for additional interest may be abandoned by an arrangement to that effect, if made in good faith upon the surrender of the certificate and, in lieu thereof, the issuance of a new one for the amount actually deposited with interest at the rate of 5 per cent. from

the new date, and under such circumstances the new certificate may be within the protection of the bank guaranty law." *State v. Farmers State Bank, ante,* p. 788.

APPEAL from the district court for Wayne county: ANSON A. WELCH, JUDGE. *Reversed in part.*

*Smith, Schall, Howell & Sheehan,* for appellant.

*Fred S. Berry* and *C. M. Skiles, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, GOOD and THOMPSON, JJ.

ROSE, J.

This is a controversy between the receiver of the Wayne County Bank of Sholes, an insolvent corporation, and Gottlieb Storz, claimant, who pleads that he is an unpaid depositor entitled to the protection of the bank guaranty law. The department of trade and commerce took charge of the bank in a failing condition August 25, 1922, when it was indebted to claimant in the sum of $18,000, evidenced by four certificates of deposit which had been issued by the bank to claimant May 16, 1922, three for $5,000 each, bearing interest at the rate of 5 per cent. per annum and maturing respectively November 2, 1922, November 15, 1922, and December 1, 1922, and one for $3,000, bearing interest at the same rate and maturing June 6, 1922. In a proceeding by the state to wind up the affairs of the bank, Storz filed with the receiver a claim for $18,000 and interest, based on the four certificates of deposit mentioned, praying for payment out of the bank guaranty fund. The receiver objected to such payment, and urged as defenses that the certificates were mere renewals of former certificates; that the bank for its own benefit at its own solicitation was a borrower; that claimant and the bank entered into and carried out a secret agreement for the payment of excessive interest; that the original transactions and the renewals resulted in loans instead of deposits; that claimant was a lender and not a depositor

794        NEBRASKA REPORTS.        [VOL. 112

State, ex rel. Davis, v. Wayne County Bank.

within the meaning of the bank guaranty law. This is a summary only of the defenses. Upon a trial of the issues raised by formal pleadings, the district court sustained the position taken by the receiver and held that claimant was not entitled to the protection of the bank guaranty law, but entered judgment in his favor for $18,000 and interest as a general creditor of the bank. Claimant has appealed.

Was claimant a lender as distinguished from a depositor within the meaning of the bank guaranty law, providing that—"No banking corporation transacting a banking business under this article shall pay interest on deposits, directly or indirectly, at a greater rate than five per cent. per annum?" Comp. St. 1922, sec. 8008.

When the bank failed it was legally indebted to claimant in the sum of $18,000. In money or its equivalent it had received that sum from assignors of claimant. This amount does not include any interest. None of the principal was ever returned. All transactions having any connection with the claim of Storz were evidenced by time certificates of deposit bearing on their face interest at the rate of 5 per cent. only. Some of them were issued as early as 1914, and for several years neither the bank nor any one for it paid any additional interest. The former payees named in the certificates were E. A. Higgins, the Storz Brewing Company, and its successor, the Storz Beverage & Ice Company. The companies named were corporations controlled by claimant, the principal stockholder and the present owner of the four certificates in controversy. At one time the bank had funds of claimant's assignors to the extent of $25,000. Later this was reduced by payments to $15,000, and afterward increased to $18,000, the amount of the claim under consideration. It was the practice of the bank to pay interest and issue new certificates upon maturity of the old.

At times when the bank could not pay certificates at maturity its cashier applied to claimant for renewals and for more money. The granting of such favors, however,

did not necessarily change the character of actual deposits to loans. Entrusting funds to a bank for future repayment, whatever the nature of the transaction, implies the anticipation of mutual benefits. Without the hope of protection or profit in some form there would be no inducement to entrust money to a bank. Regarded either as loans or deposits, funds are solicited and accepted by banks with a view to promoting banking interests. A bank's solicitation, receipt and retention of funds belonging to others are not of themselves conclusive tests of loans. The question should be determined by the facts and circumstances surrounding each individual case.

Were the transactions involved in this proceeding converted from deposits into loans by the payment of interest in excess of 5 per cent.—the rate specified in all certificates of deposit? The reserve of the bank became impaired. It was unable to pay the time certificates as they matured. Interest rates generally increased. The cashier solicited a retention of the funds and applied for more money. He was told by claimant, while in control of corporations which owned unpaid certificates aggregating $15,000, that the rate of interest was too low and that he wanted his money. He did not demand usury. The cashier offered additional interest at a rate satisfactory to claimant. Definite terms of the new arrangement do not appear in any writing nor are they stated by any witness. Afterward maturing certificates were surrendered and new ones issued, each bearing on its face interest at the rate of 5 per cent., which was regularly paid by the bank, the cashier paying in addition by his individual check a bonus varying at different times from 1 to 3 per cent. Claimant testified that the arrangement for additional interest was the individual obligation of the cashier. The payment of the bonus by individual check, while the bank paid 5 per cent. only, tends to confirm the testimony of claimant. The receiver calls attention to evidence that payments of additional interest by private check were afterward charged to the bank and credited to the personal account of the cashier. The result

was ultimate payment of excessive interest out of funds of the bank. This latter fact was first brought to the attention of claimant at the trial, if he told the truth on the witness-stand. His testimony is consistent with the documentary evidence of the transactions. From evidence that claimant had cautioned the bank to keep entries of the additional interest off its books, the cashier in testifying inferred that claimant knew the excess was being charged to the bank. Under all the circumstances it is more logical to infer that claimant, as the controlling officer of his corporations, meant to make legal deposits without exposing the transactions to unnecessary suspicion. His conduct was consistent with the theory that there were two contracts, one limiting the obligations of the bank to the precise terms of certificates of deposit bearing interest at the rate of 5 per cent. only and the other requiring an interested officer of the bank to pay additional interest on his individual account. Of course, any scheme or subterfuge to procure any part of the bank guaranty fund by evading or cheating the law is ineffectual for that purpose, but there are circumstances under which a bank may pay on a deposit the maximum rate of interest allowed by statute and an officer may, at the same time, in good faith, enter into an agreement to pay additional interest from his personal funds. Misconduct of a bank officer in subsequently taking the excess from the bank is not necessarily imputable to an innocent depositor who had no knowledge of the wrongdoing. *State v. Farmers State Bank, ante,* p. 474. What is forbidden by the bank guaranty law is payment by the bank on deposits, directly or indirectly, of interes⁺ at a greater rate than 5 per cent. per annum. The prohibition does not in specific terms prevent an officer of a bank, while acting in good faith, from paying additional interest on his personal account. Comp. St. 192ᴢ, sec. 8008. There might be instances in which such payments would save a bank ir a financial crisis or stop an unreasonable run on a solvent institution, thus protecting the guaranty fund

itself. The decision seems to be controlled by the recent opinion in *State v. Farmers State Bank, ante,* p. 474.

Moreover, the secret agreement pleaded by the receiver seems to have been abandoned when the bank issued the certificates upon which the claim of Storz is founded. When he was the individual owner of four unmatured certificates representing the funds in controversy, bearing interest at the rate of 5 per cent. per annum, aggregating $18,000, and payable to the Storz Beverage & Ice Company, he surrendered them to the bank May 16, 1922, without any agreement or purpose to exact additional interest, and received in lieu thereof the certificates on which the present claim is based. On these latter certificates no excess was ever paid by any one. Excessive interest on surrendered certificates under the circumstances disclosed by the record does not necessarily affect new ones issued and accepted in compliance with statutory terms. *State v. American Exchange Bank,* p. 834, *post.* The better view of the evidence and the law applicable thereto leads to the conclusion that claimant is protected by the bank guaranty law. That part of the judgment to the contrary is reversed and the cause remanded for the purpose of allowing his claim as a deposit.

REVERSED.