State, ex rel. Davis, v. Newcastle State Bank.

It follows therefore that the judgment of the district court must be, and is,

AFFIRMED.

STATE, EX REL. CLARENCE A. DAVIS, ATTORNEY GENERAL, V. NEWCASTLE STATE BANK.
WESTON BANK, CLAIMANT, APPELLANT, V. S. H. MORTON, RECEIVER, APPELLEE.

FILED MARCH 3, 1926. No. 23809.

1. **Banks and Banking.** Buying and selling commercial paper and discounting and rediscounting notes are not of themselves illegal banking transactions.

2. ———: LOANS AND DEPOSITS. The soliciting and receiving of funds by a solvent bank do not necessarily show the making of loans as distinguished from deposits within the meaning of the bank guaranty law.

3. ———: DEPOSITS. Commercial paper received and credited by a bank as a deposit may be the equivalent of money for commercial banking purposes within the meaning of the bank guaranty law.

4. ———: ———: EXCESSIVE INTEREST. A performed and closed transaction between a state bank and a depositor for the payment of excessive interest on deposits may be abandoned in good faith without tainting future deposits.

5. ———: RECEIVERS: POWERS. "Ordinarily a receiver takes charge of banking affairs where the bank left them, and cannot generally, in absence of fraud, mistake, or violation of law, open closed transactions which would conclude the bank, if solvent." *State v. South Fork State Bank*, 112 Neb. 623.

APPEAL from the district court for Dixon county: GUY T. GRAVES, JUDGE. *Reversed in part.*

*Slama & Donato*, for appellant.

*C. M. Skiles* and *J. J. McCarthy*, contra.

Heard before MORRISSEY, C. J., ROSE, DAY, GOOD, THOMPSON and EBERLY, JJ.

390          NEBRASKA REPORTS.          [Vol. 114

State, ex rel. Davis, v. Newcastle State Bank.

Rose, J.

This is a controversy between the receiver of the Newcastle State Bank of Newcastle, Dixon county, Nebraska, an insolvent state banking corporation, and the Weston Bank of Weston, Saunders county, Nebraska, claimant.

In a proceeding by the state of Nebraska to wind up the affairs of the Newcastle State Bank, the Weston Bank presented to the receiver a claim for $48,583.74, based on a balance of deposits April 4, 1922, in the form of a checking account protected, as alleged, by the bank guaranty fund. The allowance of the claim was resisted by the receiver on the grounds that neither money nor its equivalent was deposited by claimant in the Newcastle State Bank, and that the claim represents loans bearing interest in excess of 5 per cent. per annum, and not desposits within the meaning of the bank guaranty law. Comp. St. 1922, sec. 8008. Upon a trial of the issues, the district court found that the Newcastle State Bank, as borrower, was indebted to claimant, as a general creditor, in the sum of $48,583.74, with interest at the rate of 5 per cent. per annum from April 4, 1922, and rendered judgment therefor, but denied participation in the bank guaranty fund. Claimant has appealed.

Was the claimant entitled to the protection of the bank guaranty fund? The Newcastle State Bank failed as a commercial banking institution in April, 1922. The indebtedness of $48,583.74, owing to claimant by the insolvent bank when its doors were closed, was shown by the latter's records and is not in dispute. There was no error in the judgment for that sum in favor of claimant, as a general creditor. The controversy is over the right of recourse to the guaranty fund for the payment of the debt. It is argued by the receiver that the claim represents loans instead of deposits. While the Newcastle State Bank, in good standing, was transacting a commercial banking business in 1917 or earlier, with its depositors protected by the bank guaranty fund, it began to send commercial notes of its patrons, guaranteed by it, to claimant for discount or

rediscount. It received therefrom the proceeds. The discounted notes were returned to it when due for exchange for other commercial paper or for payment or collection or renewal. In this manner it received from time to time during a period of several years more than it returned to claimant. To a checking account of claimant the differences were credited as deposits bearing interest at the rate of 5 per cent. per annum on daily balances. The transactions were correctly shown by the bank books and the total due claimant, as already stated, was $48,583.74.

The evidence shows that at times the Newcastle State Bank was in need of money and solicited it from claimants. From this and other circumstances it is argued that the transactions were loans disguised on the books of the insolvent bank as deposits. The point does not seem to be well taken. Without deposits one of the chief inducements to commercial banking would be wanting. Buying and selling commercial paper and discounting and rediscounting notes are not of themselves illegal banking transactions. *State v. Farmers State Bank of Allen*, 113 Neb. 82. The soliciting and receiving of funds, even when a solvent bank needs money to meet its obligations, do not necessarily prove the making of loans. *State v. Wayne County Bank*, 112 Neb. 792. The evidence does not prove illegitimate banking or bad faith in the transactions assailed by the receiver. The funds and notes upon which the claim in controversy is based, for the purposes of commercial banking, were the equivalent of money. Claimant parted with them as such and they were so received. On this phase of the controversy, therefore, claimant's credits were within the terms of the bank guaranty law. Comp. St. 1922, sec. 8008; *State v. American State Bank*, 112 Neb. 182; *State v. South Fork State Bank*, 112 Neb. 623; *State v. Gross State Bank*, 113 Neb. 119; *State v. Kilgore State Bank*, 113 Neb. 772.

The receiver argues, however, that the transactions between the banks included performed agreements for interest in excess of 5 per cent. per annum, the maximum rate fixed by the bank guaranty law, and that therefore claimant

is not entitled to participate in the bank guaranty fund. This view of the transactions is based on a certificate of deposit for $3,000, bearing interest at the rate of 6 per cent. per annum and a gift of $50 by an officer of the Newcastle State Bank to an officer of the Weston Bank. These transactions were closed before the credits comprising the present claim arose. If the bank had remained solvent it would have been conclusively bound by the disposition thus made of these two items. An arrangement for excessive interest may be abandoned in good faith without tainting future deposits. *State v. Wayne County Bank,* 112 Neb. 792; *State v. American Exchange Bank,* 112 Neb. 834. No interest in excess of 5 per cent. per annum on any deposit entering into the disputed claim was paid or contemplated. The receiver took charge of the banking affairs generally where the bank left them. The rule applicable was recently stated as follows:

"Ordinarily a receiver takes charge of banking affairs where the bank left them, and cannot generally, in absence of fraud, mistake, or violation of law, open closed transactions which would conclude the bank, if solvent." *State v. South Fork State Bank,* 112 Neb. 623; *State v. American Exchange Bank,* 112 Neb. 834; *State v. Farmers State Bank of Winside,* 112 Neb. 788.

The Newcastle State Bank had the benefit of claimant's money and without it might have failed sooner, involving the bank guaranty fund in still greater losses. The better view of the evidence leads to the conclusion that claimant was a depositor within the meaning of the bank guaranty law. That part of the judgment denying to claimant the protection of the bank guaranty fund is reversed and the cause remanded for the purpose of correcting the error.

REVERSED IN PART.

Note—See Banks and Banking, 7 C. J. pp. 485 n. 82, 589 n. 44, 712 n. 23, 720 n. 96, 736 n. 75, 737 n. 89.