STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. AMERICAN EXCHANGE BANK OF BRISTOW: LUCIAN L. COOK, RECEIVER, APPELLEE: M. BAINBRIDGE ET AL., CLAIMANTS, INTERVENERS, APPELLANTS.

FILED MAY 25, 1926.   NOS. 24065, 24066, 24067.

1. **Banks and Banking:** GUARANTY FUND: CLAIMS ALLOWABLE. Where interest at a greater rate than 5 per cent. has been paid by a state bank upon certificates of deposit, but such practice is abandoned while the bank is a going concern, certificates in renewal at 5 per cent., upon which a greater rate is not paid nor contemplated, may be proper charges against the bank guaranty fund.

2. ———: ———: ———. The fact that such renewals include accumulations of excess interest on prior ones will not prevent their allowance against the guaranty fund.

3. ———: ———: ———. An agreement by an officer of the bank or a third person to pay a bonus for the deposit, or a greater rate of interest than 5 per cent. out of his own pocket, will not prevent such allowance, although, without the knowledge or consent of the depositor, such excess is charged to the bank. The denunciation of the statute is against such contracts by the corporation.

APPEAL from the district court for Boyd county: ROBERT R. DICKSON, JUDGE. *Reversed, with directions.*

State, ex rel. Spillman, v. American Exchange Bank.

*Byron Clark, Jesse L. Root* and *John A. Davies,* for appellants.

*Fred S. Berry, W. T. Wills* and *C. M. Skiles, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

These three cases were presented in this court together, are based upon substantially the same state of facts and present identical questions of law, and may, therefore, be disposed of by one opinion. They are all based upon certificates of deposit issued by the American Exchange Bank of Bristow which became insolvent and was taken over by the department of trade and commerce on January 2, 1923. The certificates in question were presented to the receiver for allowance against the state guaranty fund, and were disallowed on the ground that the bank had agreed to pay more than 5 per cent. interest thereon, were disallowed upon appeal to the district court, and the claimants have appealed to this court, and the state presents the same objection to their allowance against the guaranty fund.

The transactions resulting finally in the issuance of the certificates in question are very numerous and it will not be necessary to set them out in detail, though we find it proper for a better understanding of the questions of law involved to make a separate statement as to the claims of the three appellants. It is sufficient at this place to state that all of the certificates were drawn at six months and, on their face, draw 5 per cent. interest and are renewals, in series, of previous certificates reaching back a number of years, and each certificate includes as a part of its principal amount accumulation of interest paid on prior certificates in excess of 5 per cent. per annum. The following is a statement of the respective claims of the appellants:

M. Bainbridge, No. 1.    Certificate No. 2605, dated September 1, 1922, for $1,792. 71.    This was a renewal of a certificate for same amount dated March 1, 1922, which was

628        NEBRASKA REPORTS.        [Vol. 114

State, ex rel. Spillman, v. American Exchange Bank.

a renewal of a previous certificate with 5 per cent. interest for six months added.   No excess interest was paid on these certificates, nor was any excess interest paid upon the next preceding certificate in the series, but there was included in the latter an excess of $14.70 constituting a payment of 8 per cent. upon the certificate of which it was a renewal. The original certificate, representing the first transaction of this series, dated March 1, 1920, for $1,000 drew 5 per cent. only.

M. Bainbridge, No. 2.    Certificate No. 2629, dated October 12, 1922, for $3,055.78.   This was a renewal of a certificate dated April 12, 1922, for the same amount, which in turn renewed a certificate of October 13, 1921, with 5 per cent. interest for six months, and which in turn renewed one of April 13, 1921, which included interest paid at 6 per cent. upon three previous certificates, an excess of $67.69.   The original certificate of the series, dated March 4, 1919, for $2,000 carried only 5 per cent. interest.   The difference in principal amount arises out of additional cash or payments.

Jennie Bainbridge, No. 1.    Certificate No. 2628, dated October 12, 1922, for $1,529.85.   This was a renewal of a certificate dated April 12, 1922, for $1,492.54, with six months interest added at 5 per cent., which in turn was a renewal of a certificate for a similar amount dated October 13, 1921, and which included an excess of $67 over 5 per cent. interest upon the next preceding certificate of the series.   There is no evidence, however, in the books of the bank or the witnesses explaining this excess.   Thirteen other certificates complete this series back to March 1, 1912, upon the first four, the sixth and tenth of which only 5 per cent. interest was paid; upon the fifth, $53.97, the seventh, $79.57, the eighth, $20, the ninth, $55.43, the eleventh, $55.88, and the twelfth, $6.27, in excess of the 5 per cent. on the face of the certificates respectively were included, but no evidence from the books of the bank or otherwise explains these items.   The next in series, No. 2126, dated October 13, 1920, for $1,337.45 seems to in-

dicate payment of. excess interest of $6.49, and certificate No. 2254, dated April 13, 1921, for $1,319.77 shows an unexplained excess of $20.06.

Jennie Bainbridge, No. 2.    Certificate No. 2547, dated July 1, 1922, for $161.80.  This and the two preceding certificates in this series carry only 5 per cent interest, but the second in the series included 10 per cent. interest on the original certificate dated December 21, 1920, for $92.05, charged in the bank books.

Jennie Bainbridge, No. 3.  Certificate No. 2604 dated September 1, 1922, for $1,209.71.  This certificate and three preceding certificates carry but 5 per cent. interest, but the first of these three included $16.20, and the next preceding $55, which latter was 6 per cent. on the original certificate, dated March 1, 1920, for $1,000.

Nellie Bainbridge Claim.    Certificate No. 2624, dated September 28, 1922, for $2,393.11.    This certificate and the four preceding it in the series carry but 5 per cent. interest, but the first of the four, dated September 25, 1920, for $1,811 included interest at the rate of 6 per cent. upon the original certificate of the series, dated March 26, 1920, for $1,700, to wit, $51 and small excesses on the two following certificates, but these items do not appear as charges in the books of the bank.

It thus appears that in the claims of M. Bainbridge, Nos. 1 and 2, the original certificates were issued in full compliance with the law, and that is true of the first four certificates involved in Jennie Bainbridge series, claim No. 1. In the other claims an excess over 5 per cent. interest was included in the first renewal certificate.    It further appears that, so far as they can be identified as such, payments of excess interest began in March, 1920, and ceased, with one exception, in March or September, 1921.  The exception has reference to certificate No. 2395, in Jennie Bainbridge claim No. 1, dated October 13, 1921, for $1,492.54, where an unexplained excess of $67 appears.   In the latter part of September, 1921, the condition of the bank was unsatisfactory to the state banking department,

630          NEBRASKA REPORTS.          [VOL. 114

State, ex rel. Spillman, v. American Exchange Bank.

and the president of the bank, Mr. Frostrom, was removed, and Rollin B. Hewitt, his son-in-law, took charge of the bank at the request of the department and continued to operate it as manager and cashier until it was closed, January 2, 1923. He in no sense represented the banking department, but operated the bank for the corporation under the customary state supervision. After Hewitt took charge, each of the certificates involved in all the claims were renewed two or three times and no payment of excess interest was made except the item of $67 above referred to, which cannot be identified or explained by the books of the bank or other evidence.

J. L. Bainbridge, the son of M. Bainbridge and brother of the other two claimants, was called as a witness by the state for the purpose of showing the existence of an agreement by the bank to pay interest in excess of 5 per cent. He lived near the town of Bristow, while the claimants lived near Waverly, in Lancaster county. The witness acted as the agent of the claimants in procuring the certificates of deposit and attending to the renewals, the interest in nearly every case being added to the renewal certificate. He testified that he had a conversation with Frostrom, the president of the bank, in 1920, who agreed to pay a commission for keeping the money in his bank, and "he (Frostrom) said he figured it 8 per cent., although it was coming out of his own account. I understood it was not to affect the bank in any way." Now, this' is practically the entire direct testimony on the subject. Frostrom was not called as a witness by either party. It is contended by the state that this testimony, together with the fact that in many instances the excess amounts of the renewal certificates equalled precisely 6 or 8 per cent. interest upon the certificates renewed, and the fact that the claimants received said certificates and demanded no explanation, are sufficient to establish the existence of an illegal agreement by the bank to pay more than 5 per cent. interest. The claimants M. and Jennie Bainbridge both testified that they did not and could not figure the interest,

but trusted the bank and accepted the renewals without question.    The claimant Nellie had received an education, including two years in the high school, but testified she had no knowledge that excess interest had been included in the renewal of the certificate for $1,700, which is' the only one in her series subject to criticism.    She also testified that she relied upon the bank, and that if any interest in excess of 5 per cent. was included in the renewal it was done without her knowledge or consent.    At the time of this renewal $60 additional money was deposited, so the amount of interest ($51) was not *prima facie* apparent.    All three of the claimants testified that they had no acquaintance with Frostrom or any officer of the bank, that their dealings were all through their brother, and that they had no knowledge of any agreement with the bank for the payment of any interest in excess of 5 per cent.    It is probable Nellie would be chargeable with knowledge of the fact that $51 included in the first renewal of her certificate was equal to 6 per cent. for six months, but she claims not to have noticed it.

We think the evidence insufficient to establish the existence of an illegal agreement, under all the circumstances shown.    The evidence of J. L. Bainbridge, taken as a whole, points to a contract with the president of the bank to pay the commission or excess interest out of his own pocket.    Such an agreement we have held not to be unlawful.    *State v. Farmers State Bank,* 112 Neb. 474; *State v. American Exchange Bank,* 112 Neb. 834.    The fact that the entries upon the bank books appear to show that in some instances the excess was paid by or charged to the bank does not bind the plaintiffs.    It was not their duty to see that the president kept his promise, and, for all they knew, he did do so.    "The misconduct of an officer of a bank in charging to it interest which he agreed to pay with his own money to a depositor is not imputable to the latter, if he had no knowledge of or part in the wrongdoing." *State v. Wayne County Bank,* 112 Neb. 792.

It seems however that, assuming the existence of an

632 NEBRASKA REPORTS. [VOL. 114

State, ex rel. Spillman, v. American Exchange Bank.

illegal contract and payment of interest in excess of 5 per cent. on prior certificates, this will not necessarily taint renewals upon which no excess was paid nor agreed to be paid *(State v. Wayne County Bank,* 112 Neb. 792; *State v. Farmers State Bank,* 112 Neb. 474); that the law recognizes the existence of a *locus pœnitentiæ,* looks with favor upon a cessation of evil doing *(State v. Farmers State Bank,* 112 Neb. 788; *State v. American Exchange Bank,* 112 Neb. 834; *State v. Newcastle State Bank, ante,* p. 389); and refuses to apply the Semitic law by visiting the sins of the father upon the children. U. S. Const., art. I, sec. 9.

The certificates referred to in the evidence were issued for six months, and on three of the claims in suit on the last four, on two on the last three, and on one on the last two certificates no interest in excess of 5 per cent. per annum was paid or contemplated. It would seem therefore that, if any agreement for excess interest had at one time existed, it was completely abandoned by the parties in good faith for a period of from one to two years. The point is not made by the state, and may therefore be presumed to be of no force, that the abandonment took place only after Hewitt had been put in charge by the state banking department; but Hewitt was not acting for the department, but as manager and cashier of the corporation.

The state relies upon *Iams v. Farmers State Bank,* 101 Neb. 778, in which it was said: "The certificates in suit are renewals of certificates issued by the bank in its former name of Farmers & Merchants State Bank, and any infirmity that may have been imparted to the original certificates by an unlawful act, such as an agreement for an unlawful rate of interest, as the attorney general charges in the present case, would inhere in and vitiate the entire series of renewal certificates."

But in *State v. American Exchange Bank,* 112 Neb. 834, upon the precise point being urged, the *Iams* case was distinguished by Thompson, J., in this language: "In that case both parties intended to contravene the statute, and it was so held. The extra interest had been regularly paid

when due.    The original transaction, with no attempt to purge it, continued up to the bank's insolvency and charge taken of it by the district court looking to its closing and dissolution, and suit brought on such certificate." But here the illegal payments had ceased for a period of more than a year prior to the closing of the bank.

The state further contends that, inasmuch as the certificates upon which claims are presented include accumulations of excess interest on prior certificates, the original vice inheres in them.    We cannot accept this view. When the illegal payments were being made the transaction would be regarded as a loan, but when they were abandoned, and the interest paid, either in cash or by including it in the renewal, the certificate acquired the status of a deposit. It was perfectly competent to pay interest in excess of 5 per cent. on a loan.    When that interest was paid, the bank was a going concern, and the certificates covering the indebtedness of the bank were issued at 5 per cent. and became deposits within the guaranty law.    See *State v. American Exchange Bank,* 112 Neb. 834, 836.

It is therefore considered by the court that judgment of the lower court, in so far as the claims in question were disallowed, is erroneous, and that part is reversed and cause remanded for the purpose of requiring payment of the Bainbridge claims from the bank guaranty fund.

REVERSED.