State, ex rel. Spillman, v. Citizens State Bank.

ment of the district court is reversed and the cause re-
manded.

REVERSED.

---

STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V.
CITIZENS STATE BANK OF RALSTON: R. O. BROWNELL,
RECEIVER, APPELLANT: W. J. KENNEDY ET AL.,
CLAIMANTS, APPELLEES.

FILED MAY 7, 1927.   No. 25768.

1. **Banks and Banking:** GUARANTY FUND: DEPOSITS. During the
time a state bank is permitted by the banking department to
remain open for commercial banking and thus continues in full
exercise of its charter powers, under full charge and apparent
control of its own officers, a transaction had with it by a deposi-
tor, in good faith, of such a nature as to ordinarily create a
deposit within the protection of the guaranty law, cannot be
successfully challenged in behalf of the guaranty fund on the
sole ground that at the time of such transaction such bank was
deficient in lawful reserve, or was even insolvent.
2. **Evidence** examined, and *held* to sustain judgment of the district
court.

APPEAL from the district court for Douglas county:
WILLIAM G. HASTINGS, JUDGE. *Affirmed.*

*C. M. Skiles* and *Jackson B. Chase,* for appellant.

*Philip E. Horan, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD,
THOMPSON and EBERLY, JJ.

EBERLY, J.

This is an appeal presented by the receiver of the Citi-
zens State Bank of Ralston, Nebraska, hereafter referred
to as the bank, from an order of the district court for
Douglas county, overruling the receiver's objections to the
claims of W. J. Kennedy *et ux.,* based upon certificates of
deposit, aggregating, with interest at 5 per cent., $21,144.91,

612 · NEBRASKA REPORTS. [VOL. 115

State, ex rel. Spillman, v. Citizens State Bank.

and directing that said sum be "payable from the depositors' guaranty fund of Nebraska."

The bank received "actual money" for each of these certificates. The interest rate and all of the immediate terms and conditions of the contract sued upon were strictly within the provisions of the "state guaranty law." It is contended, however, by the receiver that, shortly after one T. J. Shanahan had retired from the presidency of the bank, it was discovered that a check account which claimant had opened March 8, 1919, had been credited with $1,245.39 as interest, computed at a rate in excess of 5 per cent.; also, that the directors, two of whom were likewise executive officers of the bank, together with Secretary Knudson of the banking department of Nebraska, held a conference relative to this matter at the Omaha Club in Omaha, Nebraska. After a discussion of the situation, the directors were advised by Mr. Knudson to see Kennedy and two other depositors who were in like situation, and to make this "suggestion to them," or "this agreement with them:" (1) That the excess interest was to be refunded to the bank; (2) a new contract of deposit be made with interest at a rate permitted by the terms of the guaranty statute; (3) another deposit of substantially equal amount be made in addition to the former deposit. If these conditions were complied with, Knudson assured the directors that he would stand behind the agreement and the moneys would be within the protection of the guaranty act. Of course, Knudson's statement, because of lack of authority, involved no legal consequences.

Whether transactions between the bank and the Kennedys that followed this conference were the result of a "suggestion" merely, or were pursuant to a definite "agreement" between the parties, the record is somewhat in doubt. But subsequently Kennedy, on December 4, 1924, converted his checking account into a certificate of deposit drawing 5 per cent., eliminating therefrom the sum of $1,245.39 which was claimed to be "excess interest." He also depos-

·ited the further and additional sum of $10,500 in cash, also upon like terms.

.   On the date of the issuance of these certificates, the bank, as a corporation, was in full exercise of its charter powers. Its business was controlled and directed by its board of directors. Its officers were in apparent charge. It was a going concern. While the fact now appears that, because of its questionable financial condition, it was then subject to special supervision by the state banking department and to special examinations by the state bank examiners, this was unknown to claimants Kennedys. It was a fact not published to the world.

The mere relation of depositor and bank is not one which would charge the former with the knowledge of the condition of the latter's solvency. Therefore, deposits made in fact and in good faith in this depository "are to be protected against the consequences of economic avalanche, financial panic, misfortune, poor banking methods, and the dishonesty of bank managers." The result of the transaction was that the Kennedys abandoned the claim for the $1,245.39, and, in good faith, converted their previous check deposit into a 5 per cent. deposit, and likewise made additional deposits, intending to conform, and actually conforming, to all conditions prescribed by the state guaranty law.

·   ·There appears to be no sufficient evidence before us of any valid "collateral agreement" which would taint either of the deposits thus made. Rather, the transaction, as an entirety, presented by the record is one to which the language of this court in *State v. American Exchange Bank*, 114 Neb. 626, is applicable. Redick, D. J., author of the opinion, says in part: "When the illegal payments were being made the transaction would be regarded as a loan, but when they were abandoned, and the interest paid, either in cash or by including it in the renewal, the certificate acquired the status of a deposit. It was perfectly competent to pay interest in excess of 5 per cent. on a loan; when that interest was paid, the bank was a going concern, and the

certificates covering the indebtedness of the bank were issued at 5 per cent. and became deposits within the guaranty law. See *State v. American Exchange Bank*, 112 Neb. 834."

It follows, therefore, that the allowance of these claims by the district court is right, and the judgment of the district court is

AFFIRMED.