MUCKLER, Respondent, v. SMITH, Superintendent of Banks, et al, Appellants.

(224 N. W. 225.)

(File Nos. 6348-6509. Opinion filed March 16, 1929.)

Superseding opinion in 51 S. D. 127, 212 N. W. 491.

*Bielski & Elliott* and *Roy E. Willy,* all of Sioux Falls, for Appellants.

*Ellwood & Knight,* of Sioux Falls, for Respondent.

CAMPBELL, J. Plaintiff instituted this proceeding seeking a writ of mandamus directing the defendant Smith, as superintendent of banks in charge of the insolvent Farmers' State Bank of Unityville, and the defendant members of the depositors' guaranty fund commission, to approve, allow, and certify a claim of plaintiff in the amount of $16,000 as a valid claim against the depositors' guaranty fund. In support of her claim plaintiff alleges that she was the owner and holder at the time of the closing of the Farmers' State Bank of Unityville of 14 time certificates of deposit, duly and lawfully issued to her by said bank, in the aggregate principal sum of $16,000. Findings and conclusions below were in favor of the petitioner, and judgment was entered awarding the writ, and defendants have appealed.

The matter was before this court on a previous appeal (same title, 51 S. D. 127, 212 N. W. 491) and it was then held that such appeal, for reasons fully set out in the opinion, was from the judgment only, and consequently that the sufficiency of the evidence to support the findings could not be reviewed. Thereafter, upon application of appellants, the judgment of this court was vacated, the record remanded to the trial court, and such proceedings duly had in the trial court that a motion for new trial was there properly made and denied, and the present appeal is from the judgment and from said order denying a new trial, and by stipulation the records and briefs on both appeals are consolidated and the entire matter resubmitted.

The real issue presented is whether or not the evidence is insufficient to justify the findings and the decision of the trial court that respondent, by virtue of her ownership of the certificates of deposit in question, had a valid claim against the depositors' guaranty fund.

The Farmers' State Bank of Unityville closed its doors and was taken over by the superintendent of banks for liquidation on October 27, 1923. The certificates of deposit in question were issued and delivered to respondent on June 29, 1923, and drew interest at the rate of 5 per cent per annum.

By the statute in force at the times involved in this proceeding (section 9020, R. C. 1919, as amended by chapter 134, Laws 1921) it was the duty of the superintendent of banks in charge of an insolvent bank for liquidation to determine and certify to the guaranty fund commission the amount necessary to pay "the unsecured depositors and holders of exchange in good faith"; and the precise question in this case is whether respondent was a depositor in good faith within the meaning of that statute.

The maximum rate of interest permitted by law to be paid by the Farmers' State Bank of Unityville upon deposits was 6 per cent up to October 1, 1922, and 5 per cent thereafter. This court has held that a certificate of deposit drawing a greater rate of interest than that allowed by law is in effect a mere loan to the bank, and that the holder thereof is not a depositor in good faith within the meaning of the Bank Guaranty Law. First National Bank v. Hirning, 48 S. D. 417, 204 N. W. 901. Even if the certificate of deposit is fair on its face and provides for a legal interest rate, yet the courts, in proper case, will examine into all the actual facts of the transaction, and the status of "depositor in good faith" will be lost if the court finds any device or evasion which in fact results in the depositor receiving an interest rate in excess of the legal maximum upon the amount actually deposited.

In the instant case there is no question but that the bank actually received $16,000 in money or money's worth at the time the 14 certificates were issued, and it is expressly conceded that there was no contract or agreement, direct or indirect, between the bank and the respondent, for the payment of any other or greater amount of interest thereon than the 5 per cent rate named in the certificates.

The evidence shows, however, that the transactions between the parties which led up to the issuance of the 14 certificates here involved in June, 1923, originated by means of a deposit of approximately $20,000 by respondent in the bank in question some time in December, 1920. For this deposit respondent received

certificates of deposit due in six months, and the bank promised to pay respondent interest on those certifictaes at the rate of 7 per cent. At the end to the six months' period respondent took her $20,000 worth of certificates to the bank, was allowed 7 per cent interest thereon, amounting to $700, and took from the bank three cashier's checks (one for $700 and two for $500 each) and two new six months' certificates of deposit, one for $9,000 and one for $10,000, on which $19,000 worth of certificates the bank again agreed to pay respondent an excessive rate of interest. The matter was carried along in that way, and at the end of each six months' period there would be a transaction between respondent and the bank wherein interest would be paid or credited on outstanding certificates held by respondent and said certificates canceled, various other business transactions adjusted between the parties, and new certificates issued, generally less in amount than the certificates surrendered for payment and canceled.

In June, 1923, at the time of the issuance of the certificates specifically here involved, as a result of the processes above described, originating with the $20,000 deposit by respondent in December, 1920, respondent held certificates issued by the Farmers' State Bank of Unityville in the aggregate principal sum of $14,000. She brought those certificates to the bank at their due date and was allowed interest thereon aggregating $560. She also brought into the Bank of Unityville at that time four certificates of deposit issued to her order by another bank, aggregating, with interest, $4,100, and a check payable to her order in the amount of $34.20, making total credits allowed her in the amount of $18,694.20. This aggregate credit of $18,694.20 was disposed of in the following fashion: A promissory note owing by respondent to the Unityville Bank was paid and canceled, the necessary amount being $1,016.20; the bank issued traveler's checks to respondent in the amount of $550; they gave her cash in the amount of $103; her open checking account in the Unityville bank was credited to the extent of $1,025; and there were issued and delivered to her the 14 certificates of deposit in question aggregating $16,000. The evidence shows that, by virtue of the agreements to pay excessive interest on prior deposits, between the original deposit in December, 1920, and the issuance of the present certificates in June, 1923, the bank had paid to respondent or had allowed to respondent, in their various six

months' settlements, excessive and illegal interest in the approximate aggregate sum of $820. This was allowed to respondent at various times at the six months' settlement periods, but it was not definitely or specifically handled at any of those times in any manner separately from the transactions as a whole, and if at any settlement period respondent brought in certificates of deposit and was allowed a certain amount of excess interest thereon, and at the same time paid a note to the bank, bought some travelers' checks, received some cash, received a credit to her checking account, and took some renewal certificates, there is no way to determine (unless by some sort of legal fiction or presumption of law) whether the excess interest went into the payment of the note, the travelers' checks, the cash, the open checking account, or the renewal certificate. Appellants in their brief say in this regard:

"On each occasion a settlement was had with respondent whereby a balance was struck between the property turned in by respondent to the bank and the property turned over by the bank to respondent. No particular track was kept of what became of the interest which was allowed to the respondent from time to time on the renewal of said certificates."

The trial court found as follows:

"The court further finds that a portion of the $16,000 evidenced by the certificates of deposit in suit was originally a deposit made by the plaintiff in the Farmers' State Bank of Unityville, on December 29, 1920, in the sum of $20,000. At the close of each six months' period thereafter, the certificates in the sum for which they were given were canceled and renewal certificates were issued, and the original certificates so issued on December 29, 1920, bore 5 per cent interest on their face. That afterwards some of the renewal certificates bore 6 per cent up until June 29, 1922; that there may have been interest in excess of 5 per cent paid upon some of these certificates and their renewals and an agreement for more than 5 per cent on some of these prior transactions, but such agreement to pay a higher rate of interest than 5 per cent, if any, was abandoned prior to the issuance of the certificates of deposit in suit; that on the 29th day of June, 1923, at the time of the issuance of the certificates of deposit in suit, plaintiff had a complete settlement with said bank, at which time she received certain credits, paid certain notes, and received certain sums in cash, re-

ducing the amount of money and credits she had in the bank to $16,000, for which the certificates of deposit in suit were issued and delivered to her; and that at said time there was no agreement to pay a higher rate of interest than 5 per cent. specified in the certificates of deposit in suit; and that no sum for interest was included in said certificates so issued."

It is the contention of appellants that the $820 of excess interest agreed to be paid by the bank to respondent on the previous certificates is mingled with and is a part of the $16,000, constituting the principal of the present certificates; that the contract to pay excessive interest is illegal and such excessive interest cannot be received from the bank; and, therefore, that the actual good-faith deposit is $16,000 less the $820, or $15,180; and that, since the actual deposit is $15,180 and there were issued in return therefor certificates in the sum of $16,000 with an agreement to pay 5 per cent on $16,000 the net result is an actual deposit of $15,180, with an agreement to pay interest thereon at the rate of more than 5 per cent, and the case must fall within the rule of First National Bank v. Hirning, supra.

Appellants rely upon the doctrine of the Nebraska case of Iams v. Farmers' State Bank (1917), 101 Neb. 778, 165 N. W. 145, wherein the Nebraska court said: "The certificates in suit are renewals of certificates issued by the bank in its former name of Farmers' & Merchants' State Bank, and any infirmity that may have been imparted to the original certificates by an unlawful act, such as an agreement for an unlawful rate of interest, as the Attorney General charges in the present case, would inhere in and vitiate the entire series of renewal certificates."

We do not believe that rule is applicable to the present case, and the Nebraska court has subsequently distinguished the Iams Case and has failed to apply the rule there suggested to cases similar to the one at bar. In State v. American Exchange Bank (1926), 114 Neb. 626, 209 N. W. 217, the Iams Case was distinguished, and the court said: "It seems, however, that, assuming the existence of an illegal contract and payment of interest in excess of 5 per cent on prior certificates will not necessarily taint renewals upon which no excess was paid nor agreed to be paid. State v. Wayne County Bank, 112 Neb. 792, 201 N. W. 907; State v. Farmers' State Bank, 112 Neb. 474, 199 N. W. 839; that the law

recognizes the existence of a locus pœnitentiæ, looks with favor upon a cessation of evil doing, State v. Farmers' State Bank, 112 Neb. 788, 201 N. W. 899; State v. Am. Exchange Bank, 112 Neb. 834, 201 N. W. 895; State v. Newcastle State Bank [114 Neb. 389], 207 N. W. 683; and refuses to apply the Semitic law by visiting the sins of the father upon the children, Const. U. S. art. 1, § 9. * * *

"The state further contends that inasmuch as the certificates upon which claims are presented include accumulations of excess interest on prior certificates the original vice inheres in them. We cannot accept this view. When the illegal payments were being made the transaction would be regarded as a loan, but when they were abandoned, and the interest paid, either in cash or by including it in the renewal, the certificate acquired the status of a deposit. It was perfectly competent to pay interest in excess of 5 per cent on a loan; when that interest was paid, the bank was a going concern, and the certificates covering the indebtedness of the bank were issued at 5 per cent and became deposits within the guaranty law. See State v. American Exchange Bank, 112 Neb. 834, 836, 201 N. W. 895."

In the instant case the trial court has found that there was no agreement to pay a rate in excess of 5 per cent upon these certificates, and that point is conceded by appellants. The trial court also specifically found that the certificates in question did not include any amount paid or agreed to be paid as excessive interest upon previous deposits. To say that any such excessive interest was in fact embraced within the $16,000 in question would require the indulging of highly artificial presumptions. We are not able to say that the evidence preponderates against the findings of the trial court, and we are of the view, under all the circumstances of this case, that the judgment and order appealed from should be and they are hereby affirmed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

BROWN, J., absent and not participating.